FILED

2018 Jun-04  PM 07:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JEANETTE BENNETT and MAGGIE BELL, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVES OF THE ESTATE OF CATHERINE GETAW, DECEASED, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION  NO. _____ |
| CIT BANK, N.A. and CIT GROUP, INC.; and FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE; FOREMOST INSURANCE COMPANY and FICTITIOUS DEFENDANTS A, B, C, D, E, F, G, H and I, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

---

## COMPLAINT

---

COME NOW Plaintiffs Jeanette Bennett and Maggie Bell, individually, and as Personal Representatives of the Estate of Catherine Getaw, deceased (by and through counsel), and bring this Complaint against Defendants CIT Bank, N.A., CIT Group, Inc.,  the Federal National Mortgage Association (a/k/a Fannie Mae), Foremost Insurance Company, and Fictitious Defendants A, B, C, D, E, F, G, H, and I, and show the Court the following:

## PARTIES

1.      Plaintiff Jeanette Bennett ("Ms. Bennett"), in her individual capacity, is a resident citizen of Indiana, and in her above-stated fiduciary capacity, is a citizen of Alabama because she is one of the two duly appointed Personal Representatives of the Estate of Catherine Getaw, deceased (the "Estate" or "Mrs. Getaw," as may be appropriate within the context), issued letters testamentary on the Estate by the Probate Court of Jefferson County, Alabama, on December 4, 2017, Case #17BE500746).  A copy of the said letters testamentary is attached hereto as **Exhibit A** and incorporated herein by reference.

2.      Plaintiff Maggie Bell ("Ms. Bell"), in her individual capacity, is a resident citizen of Indiana, and in her above-stated fiduciary capacity, is a citizen of Alabama because she is one of the two duly appointed Personal Representatives (the other being Ms. Bennett) of the Estate of Mrs. Getaw, who was issued letters testamentary on the Estate by the said Alabama Probate Court on December 4, 2017 in said Case #17BE500746.  Acting as Personal Representatives of the Estate, Ms. Bennett and Ms. Bell are authorized to bring this action on behalf of the Estate.

Moreover, acting individually, Ms. Bell and Ms. Bennett are each entitled to bring this action, which is explained in detail in paragraph 3 *infra*.

       3.    Plaintiffs, in their individual capacities, claim in this action entitlement, ownership, and title in and to certain real property that Mrs. Getaw owned at the time of her death testate on April 10, 2015, Specifically, Mrs. Getaw owned fee simple title to certain real property in the Bessemer Division of Jefferson County, Alabama, known as 926 2nd Avenue North, Birmingham, Alabama, and having a legal description of:

> Lots 5 and 6 and the South ½ of Lots 1 and 2, in Block 251, according to the Survey of the City of Bessemer, as recorded in Map Book 7, Page 75, in the Office of the Judge of Probate of Jefferson County, Alabama (the "Real Property").

Title to the Real Property devolved to Ms. Bennett and Ms. Bell (in their individual capacities) on the death testate of Mrs. Getaw, whose last will and testament dated July 20, 2000 (the "Will"), was admitted to record in said Probate Court on December 4, 2017, a copy of which is attached hereto as **Exhibit B** and incorporated herein by reference. Under the terms of ITEM THREE of the Will, the Real Property was specifically devised to Ms. Bennett and Ms. Bell (each devised an undivided, one-half (½) interest as a tenant in common) ". . . to share and share alike, per stirpes." Thus,

under the terms of the Will and Alabama's devolution of title statute (*Ala. Code* § 43-2-830), title to the Real Property devolved to Ms. Bennett and Ms. Bell, individually, on the death testate of their mother, Mrs. Getaw.[1]

4.     Because both Ms. Bennett and Ms. Bell survived Mrs. Getaw by more than five (5) days as required under *Ala. Code* §43-8-220, and neither of them filed a qualified disclaimer pursuant to the Alabama Uniform Disclaimer Act (*A*la. *Code* §43-*8-290 et seq*. are the specific devisees of the Real Property within the meaning of *Ala. Code* §43-8-227.  Therefore, the specific devise to them of the Real Property was not adeemed as a result of the foreclosure on and sale of the Real Property by one or more of the Defendants following Mrs. Getaw's death.  Rather, by application of *Ala. Code* §43-8-227(a), Ms. Bennett and Ms. Bell, in their individual capacities, are not only vested with legal title to the said real property specifically devised to them by Mrs. Getaw (i.e., the Real Property) under ITEM THREE of the Will, but also to (i) any proceeds unpaid at the death of Mrs. Getaw on fire and casualty insurance on the Real Property (*Ala. Code* §43–227(a)(3)), and (ii) property owned by the testator (Mrs. Getaw) at her death as a result of foreclosure, or obtained

---

[1]     Ms. Bennett and Ms. Bell were also devised the residuary estate of Mrs. Getaw in equal shares pursuant to ITEM FOUR OF THE Will, but their individual claims made in this action are predicated on their rights as ITEM THREE specific devisees, as well as their rights as specific devisees of the Real Property pursuant to *Ala. Code* §43-8-227, which is explained in paragraph 4 of the Complaint.

in lieu of foreclosure, of the security for a specifically devised obligation (*Ala. Code* §43-8-227(a)(4)) (collectively, the "Real Property Accretions").

5.     Anticipating that the Defendants will contend that (i) the Real Property Accretions constitute personal property and that title to the same devolved to the Personal Representatives of the Estate pursuant to *Ala. Code* §43-2-830(b), and (ii) it is only in their stated fiduciary capacities that Plaintiffs have the right to maintain this cause of action and collect the Insurance Proceeds (defined at paragraph __ *infra*), this action is brought by Plaintiffs Ms. Bennett and Ms. Bell, in their individual capacities, as well as in their fiduciary capacities as Personal Representatives of the Estate, in the latter case to be distributed in equal shares to specific devisees Ms. Bennett and Ms. Bell pursuant to ITEM THREE of the Will.

6.     Defendant CIT Group, Inc. ("CIT") is the successor by acquisition and merger to OneWest Bank FSB and OneWest Bank, N.A.  Defendant CIT Bank, N.A. ("CIT Bank"), the commercial bank subsidiary of CIT, merged with and into OneWest Bank, N.A., and the surviving entity was named CIT Bank, N.A. by merger successor or subsidiary relationship.  All references referred herein CIT and/or CIT Bank include actions of their respective predecessors or subsidiaries.

7.     Defendant Federal National Mortgage Association a/k/a Fannie Mae ("FNMA") is a federally chartered corporation doing business in Alabama.

FNMA purchases mortgage loans from commercial banks, packages those loans into bundles called "mortgage back securities," and sells those securities to investors. Plaintiffs are informed and believe that FNMA is the owner of or investor in the Reverse Mortgage Loan (as defined below), which along with the Reverse Mortgage (also defined below) was serviced by CIT.

8.     Defendant Foremost Insurance Company ("Foremost") is an insurer that insured the Real Property and has its principal place of business in Pasadena, California.

9.     Fictitious Defendants A - I are those entities or persons (i) involved with the ownership of the loan secured by the Reverse Mortgage (defined below), (ii) the owner of the accounts in which funds belonging to the Plaintiffs were placed and not refunded to Plaintiffs, or (iii) who acted in concert with the Defendants in effecting the actions described herein including servicing of the said Reverse Mortgage, who will be identified during the course of this action.

## STATEMENT OF JURISDICTION

10.     There is complete diversity of jurisdiction among the parties under 28 *U.S.C.* §1332 because Plaintiffs in their individual capacities are resident citizens of Indiana, while in their fiduciary capacities as Personal Representatives of the Estate, they are citizens of Alabama.   Defendants CIT and CIT Bank are citizens of

California, FNMA is a citizen of the District of Columbia. Plaintiffs are informed and believe that Defendant Foremost is a citizen of California.

11.    Although the amount sought by Plaintiffs in compensatory damages, exclusive of interests and costs, is $62,262.13 (see paragraph 33 *infra),* Plaintiffs also seek punitive damages, so that the "the amount in controversy more likely exceeds the [$75,000] jurisdictional requirement." *Roe v. Michelin North Am. Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quotation marks omitted); *id.* at 1064 (stating that the court can "rely[ ] on its judicial experience and common sense" to determine whether a claim satisfies the amount in controversy requirement); *see also Ala. Code* § 6-11-20 (authorizing awards of punitive damages in "tort cases where...the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice").

## ALLEGATIONS COMMON TO ALL COUNTS

12.    On or about November 26, 2005, Mrs. Getaw executed a promissory note (the "Reverse Mortgage Loan"), which was secured by a mortgage executed by Mrs. Getaw, namely: Adjustable Rate Home Equity Conversion Mortgage, a HECM reverse mortgage, for the benefit of Pacific Reverse Mortgage, Inc., dba Financial Heritage (the "Reverse Mortgage"). The Reverse Mortgage was

recorded on December 30, 2005 in the Office of the Judge of Probate of Jefferson County, Alabama ("Probate Office") as Instrument 200564/1029.

13.   CIT acted as agent and servicer of the Reverse Mortgage Loan and the Reverse Mortgage for the owner and investor of the same at the relevant times of this Complaint.

14.   On April 10, 2015, Mrs. Getaw died.

15.   After Mrs. Getaw's death, or on about April 22, 2015, Ms. Bennett and/or Ms. Bell timely notified CIT (then doing business as Financial Freedom) of their mother's death, their addresses as successors in interest of Mrs. Getaw, and provided their contact information.  Ms. Bennett notified CIT of her and Ms. Bell's interest in paying off their deceased mother's loan (i.e., the Reverse Mortgage Loan, which would accomplish the full satisfaction of the Reverse Mortgage, thus acquiring the Real Property free of all debt.

16.   On or about April 27, 2015, CIT notified FNMA of Mrs. Getaw's death.

17.   On April 30, 2015 CIT (d/b/a Financial Freedom) sent a letter to the Estate of Catherine Getaw, notifying Plaintiffs that because  of Mrs. Getaw's death, the Reverse Mortgage Loan was due and payable, and outlined options for paying it off.  One of those options was:

"the mortgage will be released and <u>no deficiency judgment will be taken</u> if the property has no junior liens and is sold for at least 95 percent of the appraised value with the net proceeds paid to the investor, even if the debt is greater than the appraised value."

18.     Paragraph 10 of the Reverse Mortgage provides:

"Lender may enforce the debt only through sale of the Property.  Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed."

19.     On October 26, 2015 CIT directed the law firm of Sirote & Permutt, P.C. ("Sirote") to foreclose the Property for the lower of the appraised amount or the loan amount.

20.     On October 28, 2015, a fire burned the residential structure on the Property, doing substantial damage. At the time of the fire, the Property was insured by Foremost.

21.     On October 30, 2015, Plaintiffs notified CIT of the fire, and initiated a claim with Foremost.

22.     On November 2, 2015, CIT conducted a foreclosure sale and sold the Property to FNMA.

9

23.    On November 5, 2015, CIT conveyed title by foreclosure deed of the Real Property to FNMA as the highest bidder at the foreclosure sale, and on November 9, 2015 the foreclosure deed was recorded in the Office of the Judge of Probate of Jefferson County, Alabama at Instrument #201512300109565 (the "Foreclosure Deed").

24.    The repayment of the Reverse Mortgage Loan was completely satisfied by the foreclosure of the Property, which is evidenced by the Foreclosure Deed, and in accordance with the terms of the Reverse Mortgage. At that time, the contract related to the Reverse Mortgage Loan terminated, along with FNMA's interest in any insurance on the Real Property (including, without limitation, the Real Property itself, all improvements thereon, and any and all tangible personal property located within such improvements).

25.    CIT, as servicer and agent for FNMA, elected to accept the foreclosure proceeds in lieu of any other repayment options or terms.

26.    Upon foreclosure, neither CIT as servicer, nor FNMA as owner or investor, no longer had any claim or entitlement to any interest in the insurance claim submitted to Foremost for the said fire damage, or the resulting insurance proceeds because they elected foreclosure as their full and final repayment remedy.

27.    On January 7, 2016, despite no longer having any interest in the said insurance claim and resulting proceeds, FNMA provided a limited power of attorney to Rutledge and Associates ("Rutledge") granting Rutledge authority to pursue the collection of the insurance proceeds for FNMA related to the damaged Real Property.

28.    On January 26, 2016, Rutledge contacted CIT regarding insurance information for the Real Property.

29.    On February 11, 2016, Rutledge filed an insurance claim with Foremost to collect insurance proceeds on behalf of the principal, FNMA, related to the damaged Real Property.

30.    On February 11, 2016, Foremost requested evidence from Rutledge related to any lien holder's financial interest in the Real Property.

31.    On February 17, 2016, Rutledge requested from CIT information to answer Foremost's questions regarding any lien holder's financial interest in the insurance claim and resulting proceeds.

32.    On February 27, 2016, Rutledge as agent for FNMA, requested information from CIT regarding the foreclosure deed, mortgage and assignments.

33.    On February 22, 2016, Foremost sent a $62,262.13 check to Rutledge in payment of the insurance claim initiated by Ms. Bennett and Ms. Bell (the "Insurance Proceeds") and check was payable to:

> "Financial Freedom, a Division of Onew *(sic)*
> Estate of Catherine Getaw."

A copy of the said check is attached hereto as Exhibit C and incorporated herein by reference.

34.    Rutledge, CIT and FNMA made misrepresentations to Foremost to require Foremost to include Financial Freedom as a payee on the check, and to cause Foremost to send the check to Financial Freedom instead of Plaintiffs.

35.    On March 10, 2016 Rutledge, concerned about cashing a check made payable to the Estate, asked CIT if it (and/or its related parties) had been contacted by Mrs. Getaw's family members regarding payment of fire damage.

36.    CIT despite having many contacts from Plaintiffs, incorrectly told Rutledge they had not been contacted by anyone related to the fire damage.

37.    Representatives of CIT, Rutledge on behalf of FNMA, or FNMA itself, wrongfully deposited the insurance proceeds into its/their accounts without the permission of the Plaintiffs.

## COUNT I

## <u>DECLARATORY JUDGMENT</u>

38.     Plaintiffs reallege and incorporate by reference the allegations in preceding paragraphs 1 through 37 above, as if set out fully herein.

39.     Pursuant to the Declaratory Judgment Act, 28 *U.S.C.* § 2201 *et. seq.*, and/or the Alabama Declaratory Judgment Act (*Ala. Code* § 6-6-220 et. seq.), make a declaration of entitlement, ownership, and title of and to the Real Property Accretions, (*i.e.*, the Insurance Proceeds collected by one or more of the Defendants), which are sought by Plaintiffs as compensatory damages herein, as well as any punitive damages awarded by this Court.  Specifically, the legal question is whether Plaintiffs Ms. Bennett and Ms. Bell, in their individual capacity, are the rightful owners and distributees of the Real Property Accretions (*i.e.*, the Insurance Proceeds) as the specific devisees under  <u>ITEM THREE</u> of the Will, interpreted in light of *Ala. Code* §§ 43-2-830(a) and 43-8-227(a) <u>or</u> whether *Ala. Code* § 43-2-830(b) applies such that the entitlement, ownership, and title to the Real Property Accretions, is vested sole in Plaintiffs Ms. Bennett and Ms. Bell, as Personal Representatives of the Estate, to be distributed by them to Ms. Bennett and Ms. Bell as specific devisees pursuant to <u>ITEM THREE </u>of the Will.

13

WHEREFORE, Plaintiffs respectfully request of the Court that it make some declaratory judgment determinations.

## COUNT II
## CONVERSION

40.     Plaintiffs reallege and incorporate by reference the allegations in preceding paragraphs 1 through 39 above, as if set out fully herein.

41.     FNMA, or the fictitious defendant investor owner, acting through its agents, CIT and/or Rutledge, intentionally took the insurance proceeds it knew belonged to Plaintiffs and deposited said funds into its account, or authorized the deposit into one of its agents accounts.

42.     FNMA, or the fictitious defendant investor owner, through its agents exercised dominion over the insurance proceeds belonging to Plaintiffs, to the exclusion of and in defiance of Plaintiffs' rights, even though Plaintiffs had an immediate right to possession of such funds.

43.     FNMA,  or the fictitious defendant investor owner, through its agents by depositing said funds into an account controlled by it or its agents wrongfully took and has wrongfully detained and used Plaintiffs' property (i.e., the Real Property and Real Property Accretions),

44.     Such action of FNMA, or the fictitious defendant investor owner, through its agents constitutes conversion under Alabama law.

WHEREFORE, Plaintiffs demand a refund of the Insurance Proceeds, (i.e., the Real Property Accretions) including interest, attorneys' fees and costs.

## COUNT III
## FRAUD

45.     Plaintiffs reallege and incorporate by reference the allegations in preceding paragraphs 1 through 44 above, as if set out fully herein.

46.     Because Foremost insured Mrs. Getaw as the owner of the Real Property as well as any lien holder encumbering the same, upon Mrs. Getaw's death, Foremost insured Plaintiffs, as well as FNMA through its servicing agent CIT.

47.     When the fire burned the Real Property, FNMA had an interest in the said Insurance Proceeds as lien holder with an outstanding unpaid lien.

48.     Once FNMA through its agent CIT, learned of the fire, FNMA could have chosen not to foreclose on the Real Property and request that the Insurance Proceeds be applied to its loan balance.

15

49.   Instead of foregoing foreclosure, FNMA elected its contractual right to foreclose on the Property.  Such election resulted in a full release of its position as lien holder encumbering the Real Property.

50.   The Reverse Mortgage Loan and Reverse Mortgage documents provide that if the lender forecloses, the foreclosure fully satisfies its debt, and no further amounts will then be owed on the Reverse Mortgage Loan.

51.   FNMA and its agents knew or should have known of the payment in full of the Reverse Mortgage Loan and Reverse Mortgage's full satisfaction upon foreclosure.

52.   FNMA's application for the collection of the Insurance Proceeds, and its ultimate deposit of the Insurance Proceeds, occurred after FNMA's foreclosure and the full payment of the Reverse Mortgage Loan and full satisfaction of the Reverse Mortgage.

53.   FNMA misled Foremost into believing it had a lien hold interest in the Real Property, so that Foremost would include them on the final settlement check.

54.   FNMA, through its agents, deposited the Insurance Proceeds with full knowledge such proceeds did not belong to FNMA.

16

55.   FNMA intentionally misled the bank where it deposited the check and by depositing such check, misrepresented that it had appropriate authority to do so.

56.   CIT misled Rutledge, into believing a balance on the Reverse Mortgage Loan existed after foreclosure.

57.   Rutledge misled Foremost by indicating a balance remained due and payable on the Reverse Mortgage Loan after foreclosure on the Real Property.

58.   FNMA's misleading actions were an effort to fraudulently obtain the Insurance Proceeds to which it was not entitled.

59.   FNMA's misleading actions were an effort to fraudulently and permanently deprive Plaintiffs of the Insurance Proceeds (*i.e.*, the Real Property Accretions) to which Plaintiffs were entitled.

60.   FNMA's actions caused Foremost to send the Insurance Proceeds to FNMA and allowed FNMA to deposit the Insurance Proceeds in a bank account owned by it or in a bank account of FNMA or one of its authorized agents, and have thus deprived Plaintiffs of the Insurance Proceeds.

61.   FNMA, through its agents, retained said proceeds after demands by Plaintiffs for a return of the same.

17

WHEREFORE, Plaintiffs demand a refund of the Insurance Proceeds, including interest, attorneys' fees, costs and punitive damages.

## COUNT IV
## WANTONNESS

62.     Plaintiffs reallege and incorporate by reference the allegations in preceding paragraphs 1 through 61 above, as if set out fully herein.

63.     FNMA's, and its agents' acts were knowingly and intentionally performed with a reckless disregard for Plaintiffs' rights with knowledge and intent to deprive Plaintiffs of the Insurance Proceeds to which Plaintiffs were entitled.

64.     FNMA knowingly communicated to Foremost that it was entitled to retain the Insurance Proceeds and apply such proceeds against a non-existent loan balance.  FNMA knew, or should have known the Reverse Mortgage Loan had been paid in full and the Reverse Mortgage fully satisfied and released.

65.     FNMA, knowingly authorized its agent to apply for and seek Insurance Proceeds related to collateral for the Reverse Mortgage Loan when the Loan had been fully paid and the Reverse Mortgage encumbering the Real Property released.  Such actions were taken with reckless disregard of Plaintiffs' rights with knowledge that harm to Plaintiffs was likely to occur.

18

66.     FNMA's authorization of a deposit of the check for Insurance Proceeds payable to Financial Freedom and the Estate was a conscious act in reckless disregard of the rights of Plaintiffs, the rightful recipients of the Insurance Proceeds, with knowledge that such act was likely to cause harm.

67.     CIT's representation to Rutledge that it had not been contacted by anyone related to payment of the Insurance Proceeds was a misleading, conscious act in reckless disregard of the rights of Plaintiffs, with knowledge that such actions were likely to cause harm the Plaintiffs.

68.     CIT's and FNMA's refusal to return the Insurance Proceeds to Plaintiffs after demand was an unlawful conscious act in disregard of Plaintiffs' rights and with knowledge that such acts were likely to cause Plaintiffs harm.

WHEREFORE, Plaintiffs pray that this Court will order, adjudge, decree and declare that Plaintiffs are entitled to a refund of the Insurance Proceeds, including interest, attorneys' fees, costs, and punitive damages.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Submitted this 1st day of June, 2018.

*/s/ Walter F. Scott III*
Walter F. Scott III (ASB-8813-C65W)

*/s/ Sylvion S. Moss*
Sylvion S. Moss (ASB-7612-Y82M)

**OF COUNSEL:**
GALLOWAY, SCOTT, MOSS & HANCOCK, LLC
2200 Woodcrest Place, Suite 310
Birmingham, AL 35209
205.949.5580
205.949.5581 *fax*
ssm@gallowayscott.com
walter@gallowayscott.com

## SERVICE

Please serve defendants via certified mail to the following addresses:

CIT BANK, N.A.
888 East Walnut Street
Pasadena, CA 91101

FEDERAL NATIONAL
MORTGAGE ASSOCIATION
A/K/A FANNIE MAE
c/o Legal Department
3900 Wisconsin Avenue, NW
Washington, DC 20016

FOREMOST INSURANCE
COMPANY
c/o The Corporation Company
2000 Interstate Park Drive
Montgomery, AL 36109-5421

CIT GROUP, INC.
888 East Walnut Street
Pasadena, CA 91101

*/s/ Walter F. Scott III*
OF COUNSEL