FILED
2019 Jan-28 PM 01:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JEANETTE BENNETT, et al.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| v. ] | **CIVIL ACTION NO.** |
| ] | **2:18-CV-00852-KOB** |
| **CIT BANK, N.A., et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

This convoluted case involves a reverse mortgage, a death, an inheritance, a fire, a foreclosure, and an insurance payout, after which Plaintiffs Jeanette Bennett and Maggie Bell contend their money ended up in the wrong hands.

Plaintiffs allege that, among other Defendants, CIT Bank, N.A., CIT Group, Inc., and Federal National Mortgage Association ("Fannie Mae") wrongfully took insurance proceeds that belonged to Plaintiffs or their mother's estate through a series of misrepresentations; the setting arises out of an insurance claim on real property that Fannie Mae bought at a foreclosure sale.  In their amended complaint, Plaintiffs seek to recover the insurance proceeds from Defendants by bringing claims for declaratory judgment, conversion, fraud, and wantonness.  CIT and Fannie Mae filed substantively identical motions to dismiss.  (Doc. 4, Doc. 6, respectively).

1

The court will DENY the motions to dismiss as to Plaintiffs' claims for declaratory judgment and conversion. Plaintiffs have alleged a plausible interest in the insurance proceeds because they owned the realty covered by the insurance policy at the time they filed the insurance claim, the insurance company listed Plaintiffs' mother's estate as a payee on the insurance proceeds check, and Plaintiffs owed no debt to Defendants after foreclosure. Because Plaintiffs allege that Defendants took the insurance proceeds to the exclusion of Plaintiffs' rights, Plaintiffs have sufficiently alleged an actual controversy to bring a cause of action for declaratory judgment and conversion.

But the court will GRANT the motions to dismiss as to Plaintiffs' claims for fraud and wantonness. Plaintiffs have not pled facts showing (1) reliance by them on any misrepresentation to support their fraud claim, or (2) any non-economic harm to support a standalone claim for wantonness.

## I. STANDARD OF REVIEW

A motion to dismiss challenges the legal sufficiency of a complaint. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The complaint will survive the motion to dismiss if it "allege[s] 'enough facts to state a claim to relief that is plausible on its face.'" *Adinolfe v. United Tech. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).

For a complaint to be "plausible on its face," it must contain enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the court accepts as true the factual allegations in the complaint. *Id.*

But not all allegations can defeat a motion to dismiss. "[L]abels and conclusions" and speculation "will not do." *Twombly*, 550 U.S. at 555. So, the court will look only at well-pled *facts*, and if those facts, accepted as true, state a plausible claim for relief, then the complaint will survive the motion to dismiss. *Iqbal*, 556 U.S. at 678.

## II. FACTUAL BACKGROUND

The Plaintiffs are heirs of Catherine Getaw and the personal representatives of her estate. In November 2005, Ms. Getaw executed a promissory note that was secured by a reverse mortgage that encumbered her home in Birmingham, Alabama. Financial Heritage held the reverse mortgage and CIT acted as agent and servicer of the reverse mortgage. (Doc. 3 at ¶¶ 12–13).

Ms. Getaw died in April 2015. Her will devised her home to the Plaintiffs without limitations; so, under Ala. Code § 43-2-830(c), the Plaintiffs took the home subject to the reverse mortgage. (Doc. 3 at ¶¶ 3, 14).

CIT then sent a letter to the Plaintiffs that included the following option for

paying off the reverse mortgage loan:

> [T]he mortgage will be released and <u>no deficiency judgment will be taken</u> if the property has no junior liens and is sold for at least 95 percent of the appraised value with the net proceeds paid to the investor, even if the debt is greater than the appraised value.

(Doc. 3 at ¶ 17) (emphasis in original).

In October 2015, CIT initiated foreclosure proceedings on the home. Then, on October 28, 2015, a fire burned the home. At the time of the fire, Defendant Foremost Insurance Company insured the home. The Foremost insurance policy is not in the record and Plaintiffs do not allege any specific terms of the policy. Plaintiffs promptly notified CIT of the fire and filed an insurance claim for fire damage with Foremost. (Doc. 3 at ¶¶ 19–21).

On November 2, 2015, CIT sold the property to Fannie Mae at a foreclosure sale. According to Plaintiffs, the foreclosure sale completely satisfied the repayment of the reverse mortgage loan pursuant to the foreclosure deed and the terms of the reverse mortgage. Though the foreclosure deed and the reverse mortgage contract itself are not in the record, Plaintiffs allege that the reverse mortgage contract stated:

> Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

(Doc. 3 at ¶ 18). And Plaintiffs allege that CIT "elected to accept the foreclosure proceeds in lieu of any other repayment options or terms." (*Id.* at ¶ 25).

After the sale, Fannie Mae, through its attorney, contacted CIT regarding insurance information for the home. Then, on February 11, 2016, Fannie Mae filed an insurance claim with Foremost for the fire damage to the home. Foremost responded by requesting evidence from Fannie Mae related to any lien holder's interest in the home, the insurance claim, and any resulting proceeds. Fannie Mae then requested the same information from CIT, as well as information regarding the foreclosure deed, mortgage, and assignments. (Doc. 3 at ¶¶ 29–32).

At the time that Fannie Mae filed the insurance claim, CIT conducted business as "Financial Freedom." On February 22, 2016, Foremost sent a $62,262.13 two-party check to Fannie Mae's attorney made payable to

> "Financial Freedom, a Division of Onew [sic]
> Estate of Catherine Getaw"

(Doc. 3 at ¶¶ 17, 33).

Finally, Plaintiffs allege that "[r]epresentatives of CIT, [Fannie Mae's attorney], or [Fannie Mae] itself, wrongfully deposited the insurance proceeds into its/their accounts without the permission of the Plaintiffs." (Doc. 3 at ¶ 37).

In their amended complaint, Plaintiffs bring claims for declaratory judgment, conversion, fraud, and wantonness, both personally and as personal representatives of Ms. Getaw's estate. The claim that only Plaintiffs were entitled to the insurance proceeds underlies each claim. In Count One for declaratory judgment, Plaintiffs ask the court to declare their rights to the proceeds. In Count Two for conversion,

Plaintiffs allege that Defendants wrongfully took the proceeds from them. In Count Three for fraud, Plaintiffs allege that Defendants fraudulently took the proceeds from them by misrepresenting the status of the reverse mortgage loan. And in Count Four for wantonness, Plaintiffs allege that Defendants took the proceeds with reckless disregard for Plaintiffs' rights. For each claim, Plaintiffs demand recovery of the $62,262.13 in insurance proceeds.[1]

The court will address Plaintiffs' interest in the insurance proceeds and each of their claims. In doing so, the court will find that Plaintiffs have stated a plausible right to the proceeds to state a claim for declaratory judgment and conversion, but not for fraud and wantonness.

## III. ANALYSIS

Plaintiffs previously attempted to recover the insurance proceeds in *Heirs at Law of Catherine Getaw v. CIT Bank, N.A.*, No. 2:17-CV-1823-KOB (filed October 30, 2017). The court dismissed the amended complaint in that case without prejudice because, among other reasons, Plaintiffs had not yet been appointed personal representatives of Ms. Getaw's estate to bring suit on behalf of the estate. 2018 WL 2431346, at *5 (N.D. Ala. May 30, 2018). Plaintiffs have

---

[1] Plaintiffs seek $62,262.13, exclusive of interests and costs, in compensatory damages for all claims, and some amount in punitive damages for their fraud and wantonness claims. So, at this point in the proceedings, the amount in controversy likely exceeds $75,000 and the court has jurisdiction. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010) (courts can use experience and common sense to determine the amount in controversy alleged in a complaint).

since been appointed personal representatives of Ms. Getaw's estate, so they have cured that defect. (Doc. 3 at 21). But Plaintiffs have failed to correct another glaring issue with their first lawsuit.

In its memorandum opinion dismissing Plaintiffs' amended complaint in the first case, the court noted that "the amended complaint is a classic shotgun pleading in two ways. First, it contains 'multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.' *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Second, it is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.' *Id.* at 1322." *Getaw*, 2018 WL 2431346, at *1. The present amended complaint commits the same offenses.

As in the first case, the amended complaint here contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321. Most egregiously, the amended complaint concludes with a wantonness claim that simply clothes each preceding claim with superficial indicia of wantonness. The amended complaint is also "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. And it

7

asserts "multiple claims against multiple defendants without specifying . . . which of the defendants the claim is brought against." *Id.*

But despite the court's advice in Plaintiffs' first lawsuit, and despite the Eleventh Circuit's condemnation of shotgun pleadings, the court, to the best of its ability, will *again* parse the relevant grounds for each of Plaintiffs' claims.

### A. <u>**Declaratory Judgment**</u>

In their Count One for declaratory judgment, Plaintiffs ask the court to declare that they are entitled to the insurance proceeds. Because an actual controversy exists as to the central question in this case—who is entitled to the insurance proceeds—the declaratory judgment action will survive the motion to dismiss.

The Declaratory Judgment Act grants federal courts the discretion to declare the rights of parties in actual controversies. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a).

Because the Declaratory Judgment Act limits the court's jurisdiction to actual controversies, "[i]n all cases arising under the [Act], the threshold question is whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Cas. &*

*Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995). For an actual controversy to exist, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

And even when an actual controversy exists, the court still has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. When determining whether to exercise its discretion, the court considers practicality, judicial efficiency, and the "facts bearing on the usefulness of the declaratory judgment remedy[] and the fitness of the case for resolution." *Id.* at 288–89.

In their motions to dismiss, Defendants contend that no controversy exists because Plaintiffs have no personal right to the insurance proceeds. According to Defendants, because insurance proceeds are personal property, and because only real property devolves to heirs at the time of the decedent's death under Alabama law, Plaintiffs have no personal interest in the insurance proceeds. For the same reason, Defendants contend that Plaintiffs lack standing as individuals to bring any claim. (Doc. 4-1 at 10–15). The court is not convinced.

True, under Alabama law, only *real* property devolves to specific devisees in the decedent's will upon the decedent's death. Ala. Code § 43-2-830(a). But this

9

fact alone does not prevent Plaintiffs from maintaining a cause of action.

At the moment of Ms. Getaw's death, title to the real property passed to the Plaintiffs. *See* Ala. Code § 43-2-830(a). Then, when the fire burned the property, Plaintiffs filed an insurance claim under a policy that insured property they then owned. Granted, the insurance policy itself is not in the record, but Foremost did not reject Plaintiffs' insurance claim and ultimately listed the estate as a payee on the check, thereby representing the validity of Plaintiffs' claim. These factual allegations show that Plaintiffs may plausibly have a right to the insurance proceeds.

But Plaintiffs' right was not absolute, because when they acquired title to the property, it was subject to the reverse mortgage. *See* Ala. Code § 43-2-830(c). Under the Alabama Supreme Court's "foreclosure after loss" rule and the alleged terms of the reverse mortgage contract, the foreclosure sale to Fannie Mae extinguished CIT's insurable interest and right to recover for the fire loss.

Under the "foreclosure after loss" rule, the mortgagee forfeits its right to recover under an insurance policy for a loss that occurs before foreclosure if the foreclosure sale fully satisfies the mortgage debt. *Nationwide Mut. Fire Ins. Co. v. Wilborn*, 279 So. 2d 460, 465 (Ala. 1973). Because the insurance policy "insures only the mortgagee's debt, *full payment of that debt extinguishes the mortgagee's insurable interest* and the mortgagee will *not* be allowed to recover insurance

10

proceeds." *Am. Fire & Indem. Co. v. Weeks*, 693 So. 2d 1386, 1388 (Ala. Civ. App. 1997) (emphasis added) (citing *Wilborn*, 279 So. 2d at 465).

Here, Plaintiffs allege that the foreclosure sale to Fannie Mae—the only means by which CIT could enforce the debt pursuant to the reverse mortgage contract—fully satisfied the reverse mortgage debt, thereby extinguishing CIT's insurable interest and right to recover the insurance proceeds. So no party had priority over Plaintiffs, which reinforces Plaintiffs' plausible right to recover the insurance proceeds.

The court agrees with Defendants' assertion repeated throughout their motions to dismiss: the insurance proceeds are personal property and personal property does not pass to heirs immediately upon the decedent's death. But the insurance proceeds and the damage giving rise to them did not exist at the time of Ms. Getaw's death. Instead, after Ms. Getaw died and Plaintiffs inherited the real property, Plaintiffs, arguably with an insurable interest, filed an insurance claim before the foreclosure sale under a policy that covered the property they then owned; the insurance company did not reject the claim and instead listed the estate as a payee; and CIT released the mortgage upon foreclosure and considered the debt fully paid by selling the property to Fannie Mae.

Although the court does not know much info needed to resolve this dispute, these facts, accepted as true, show that Plaintiffs may plausibly have a personal

claim to the insurance proceeds that can be relieved with a declaratory judgment. So, the court will DENY Defendants' motions to dismiss Plaintiffs' Count One for declaratory judgment.

### B. Conversion

In Count Two, Plaintiffs allege that "[Fannie Mae], or the fictitious defendant investment owner, acting through its agents, CIT and/or [Fannie Mae's attorney]," committed conversion under Alabama law by depositing the insurance proceeds represented by the check from Foremost "into its account, or authorized the deposit into one of its agent's accounts." (Doc. 3 at ¶ 41). The conversion claim will also survive the motion to dismiss.

To state a claim for conversion, a plaintiff must show "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse." *Ott v. Fox*, 362 So. 2d 836, 839 (Ala. 1978). "The Alabama Supreme Court has repeatedly held that an action for the conversion of money is improper unless there is earmarked money or specific money capable of identification." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303 (11th Cir. 2010).

Alabama law interprets "specific money capable of identification" literally. "Money is specific and capable of identification where, for example, it is 'money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep

intact and deliver this specific money rather than to merely deliver a certain sum.'" *Edwards*, 602 F.3d at 1304 (emphasis omitted) (quoting *Gray v. Liberty Nat. Life Ins. Co.*, 623 So. 2d 1156, 1160 (Ala. 1993)). Specifically identifying a certain *amount* of money is not enough: "[i]dentifiable amounts of money are one thing, specific money capable of identification is another. . . . [A]n action for the conversion of money requires the money itself, not just the amount of it, to be specific and capable of identification." *Edwards*, 602 F.3d at 1304. For example, "money directly traceable to a special account is sufficiently identifiable to support an action for conversion." *Greene Cty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 899 (Ala. 1991). And "[c]hecks, and the property rights represented thereby," can be specific money capable of identification. *Crown Life Ins. Co. v. Smith*, 657 So. 2d 821, 823 (Ala. 1994).

Here, Plaintiffs have sufficiently alleged that the $62,262.13 in insurance proceeds represented by the check from Foremost constitutes specific money capable of identification. Plaintiffs allege that Defendants took the check, which is itself specific and identifiable property, and deposited the funds represented by the check into its account. That money itself, not just the amount of it, is specific and identifiable sitting in one of Defendants' accounts. Plaintiffs seek to recover that identical money. *Cf. Crown Life*, 657 So. 2d at 823 (finding that funds represented by insurance premium refund checks deposited into accounts constituted specific

and identifiable money to support a conversion action).

And Plaintiffs have alleged a wrongful taking of that money. As previously discussed, Plaintiffs have alleged a plausible entitlement to the proceeds represented by the check. Yet Defendants allegedly deposited the proceeds of the check made payable to the estate into one of their accounts to the exclusion of Plaintiffs. So, Plaintiffs have alleged a wrongful taking of specific money capable of identification and thus state a plausible conversion claim. The court will DENY Defendants' motions to dismiss Count Two for conversion.

### C. Fraud

In Count Three, Plaintiffs allege that Defendants committed fraud under Alabama law to obtain the insurance proceeds. The court disagrees.

To state a claim for fraud, a plaintiff must allege (1) a misrepresentation of material fact; (2) made willfully, recklessly, without knowledge, or mistakenly; (3) which was justifiably relied on *by the plaintiff*; and (4) which caused damage. *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 422 (Ala. 1997) (citing Ala. Code § 6-5-101). Plaintiffs' claim here fails because they have not alleged reliance *by them* under the third element of fraud.

Plaintiffs assert that CIT and Fannie Mae fraudulently deprived them of the insurance proceeds through a series of vague misrepresentations. First, according to Plaintiffs, CIT misled Fannie Mae into believing that a balance still existed on

14

the reverse mortgage loan after the foreclosure sale.  Then, Fannie Mae, though it knew that no balance existed and that it had no right to collect the insurance proceeds, misled Foremost into believing that Fannie Mae had a right to collect the proceeds and apply them to the loan balance.  So, Foremost named CIT a payee on the check and delivered the check to Fannie Mae so that Fannie Mae could apply the proceeds to the loan balance.  And finally, Fannie Mae misrepresented to the bank where it deposited the check that it had the authority to do so. (Doc. 3 at ¶¶ 51–57).

Notably, Plaintiffs have not alleged that any Defendant made a misrepresentation to *them*—Plaintiffs are strangers to each communication and transaction in the alleged fraud.  Plaintiffs attempt to circumvent this issue by arguing that "Alabama law allows fraud claims when the false representation is to a third party other than to Plaintiff." (Doc. 27 at 12).  True, Alabama law does "in certain limited circumstances" recognize "a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff." *Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004).  But Alabama law does *not* "excus[e] a plaintiff from the requirement of establishing his reliance upon that misrepresentation." *Id.*; *see Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp. 2d 1280, 1293 (M.D. Ala. 2001) (Alabama courts "have never gone so far as to say that the injured party does not have to prove reliance on his or her

15

part on the alleged misrepresentation" even when made to a third party).

Plaintiffs have not alleged that they ever relied on any misrepresentation made to another party, so the court will GRANT the motions to dismiss Count Three for fraud. *See Ex parte DaimlerChrysler Corp.*, 952 So. 2d 1082, 1091 (Ala. 2006) (dismissing fraud claim because "there is no allegation in the complaint that [the plaintiff] relied on any alleged misrepresentation made by [the defendant]" to a third-party); *Delta Health*, 887 So. 2d at 899 (finding no jury question of fraud where "the record is devoid of any evidence tending to establish that [the plaintiff] relied to his detriment on any of the alleged misrepresentations made by [the defendant] to [a third-party]).

### D. <u>Wantonness</u>

Finally, Plaintiffs bring a claim for wantonness by alleging that Defendants committed the acts underlying the conversion and fraud—depositing the funds belonging to Plaintiffs after misrepresenting the status of the reverse mortgage loan—"knowingly and intentionally," with "reckless disregard," and with "knowledge that such actions were likely to cause harm." (*See* Doc. 3 at ¶¶ 63–68). Plaintiffs fail to state a plausible claim for relief by merely attaching conclusory allegations to their other claims.

Further, Plaintiffs' wantonness claim fails because they allege purely economic harm—the loss of $62,262.13—and under Alabama law, a plaintiff can

16

sue for wantonness only for personal injury or property damage. *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012) (citing *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1955)).

In reality, Plaintiffs do not allege a standalone cause of action for the tort of wantonness, but rather argue for the extent of Defendants' damages for conversion. *Cf. Citizens Bank of Moulton v. Jones*, 671 So. 2d 737, 741 (Ala. Civ. App. 1995) (upholding award of punitive damages for a conversion claim because the defendant converted property sale proceeds in wanton disregard of the true owner's rights). So the court will GRANT the motions to dismiss Count Four for wantonness.

## IV. CONCLUSION

By separate order, the court will **GRANT IN PART** and **DENY IN PART** Fannie Mae's and CIT's motions to dismiss. The court will **DISMISS** Plaintiffs' Count Three for fraud and Count Four for wantonness against CIT and Fannie Mae without prejudice. Plaintiffs' Count One for declaratory judgment and Count Two for conversion will remain.

**DONE** and **ORDERED** this 28th day of January, 2019.

_/s/ Karon O. Bowdre_
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE