# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEANETTE BENNETT, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **2:18-CV-00852-KOB** |
| **CIT BANK, N.A., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

This dispute over insurance proceeds comes before the court on Plaintiffs
Jeanette Bennett's and Maggie Bell's motion to compel Defendants CIT Bank,
N.A. and CIT Group, Inc. to produce documents and the supplement to that
motion. (Docs. 82 and 100).

CIT and the other Defendant in this case, Federal National Mortgage
Association, shared with each other emails containing legal advice from their
respective counsel. CIT withheld those emails from discovery on asserted grounds
of attorney-client privilege. Plaintiffs move the court to compel CIT to produce
the emails because, according to Plaintiffs, CIT and Fannie Mae waived the
attorney-client privilege over the emails by sharing the emails with each other.

As explained below, the court will deny the motion to compel because an
exception to the rule that a party waives the attorney-client privilege by disclosing

1

privileged communications with a third party—Alabama's so-called "common interest doctrine"—applies to the facts of this case.  Under the common interest doctrine, CIT and Fannie Mae did not waive the attorney-client privilege over the emails from their counsel by sharing the emails with each other because CIT and Fannie Mae shared a common legal interest in the matters discussed in those emails.

## I.      STANDARD OF REVIEW

State law governs the attorney-client privilege in this case.  Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  The party asserting the attorney-client privilege bears the burden of establishing "the existence of an attorney-client relationship as well as other facts demonstrating the claim of privileged information."  *Lynch v. Hamrick*, 968 So. 2d 11, 14 (Ala. 2007).  And the court looks at all of the evidence presented to determine whether communications are privileged.  *Exxon Corp. v. Dep't of Conservation & Nat. Res.*, 859 So. 2d 1096, 1103 (Ala. 2002).

## II.     BACKGROUND

A.      Facts

Plaintiffs inherited a house from their mother, Catherine Getaw, after she passed away in 2015.  CIT, who serviced a reverse mortgage loan secured by a

mortgage recorded against the house, foreclosed on the mortgage and scheduled a foreclosure sale for November 2, 2015.

A few days before the foreclosure sale, a fire damaged the house. Plaintiffs filed a claim for the fire damage against an insurance policy issued by Foremost Insurance Company that covered the house.

Subsequently, Fannie Mae purchased the house at the foreclosure sale. Fannie Mae, through the law firm of Rutledge & Associates, also filed a claim for the fire damage against the Foremost policy. So both Plaintiffs and Fannie Mae submitted claims for the same damage to the same property under the same insurance policy.

On February 22, 2016, Foremost sent attorney Rutledge a check for $62,262.13 made payable to "Financial Freedom, a Division of Onew [sic] Estate of Catherine Getaw." Rutledge sent the check to CIT, which was then doing business as Financial Freedom. CIT then deposited the check into its bank and sent all of the $62,262.13 to Fannie Mae.

Plaintiffs assert that CIT had no right to unilaterally deposit the check. After the court granted in part CIT's motion to dismiss and granted in full former defendant Foremost's motion to dismiss, two of Plaintiffs' claims in their amended complaint remain pending in this case: (1) declaratory judgment that only Plaintiffs are entitled to the insurance proceeds; and (2) conversion against Fannie Mae for

allegedly wrongfully retaining the insurance proceeds.

B.    The Two Documents at Issue in the Motion to Compel

In discovery, CIT withheld several documents from production and redacted information from produced materials on grounds of various privileges.  CIT identified those withheld documents and redacted information on a privilege log and a supplemental privilege log.  Plaintiffs originally moved to compel CIT to produce a large number of those withheld documents and redacted materials.  But, following a hearing and several discussions between the parties, Plaintiffs narrowed their motion to compel down to two documents that the court reviewed *in camera*.  The court describes these two documents below.

1.    *The May 15, 2016 email sent by Fannie Mae's counsel to Fannie Mae that Fannie Mae then shared with CIT*

The first document at issue in Plaintiffs' motion to compel is an email sent to Fannie Mae by its counsel that Fannie Mae later forwarded to CIT.

An attorney at Rutledge, Eric Vester, sent an email to a Fannie Mae employee, Ikenna Akotaobi, on May 15, 2016.  The email addressed a phone call from one of the Plaintiffs and an insurance adjuster, and Mr. Vester also discussed relevant Alabama law.

Two months later, on July 13, 2016, Plaintiffs' attorney reached out to Fannie Mae's counsel for the first time.  Plaintiffs' attorney sent an email to a Rutledge attorney that stated, "I represent Jeanette Bennett and Maggie Bell for the

Estate of Catherine Getaw.  We are in the process of establishing Ms. Getaw's estate (if necessary) in order to obtain the excess of the sale of Ms. Getaw's property.  Ms. Getaw left a Will appointing Jeanette Bennett and Maggie Bell as co-executrixes of the estate.  Please accept this email as my request for a formal accounting of the proceeds of the sale of said property . . . ."  (Doc. 105-13 at 3).

Fannie Mae then brought CIT into the fold regarding Plaintiffs' attorney's request.  On July 29, 2016, Fannie Mae employee Ikenna Akotaobi sent an email to a CIT Bank employee, Rex Lamb, that stated, "[a]ttached is the background information regarding this particular [home equity conversion mortgage] case.  I went ahead and provided our hazard claim vendor, Rutledge Claims Management, with your contact information.  I will give them any additional contacts needed for this matter to be discussed with the heirs to the borrower's estate and insurance adjuster, once that is provided."  (Doc. 105-14 at 2).  The "background information" attached to the email was the May 15, 2016 email sent by Fannie Mae's counsel to Fannie Mae that is at issue here.

CIT listed the May 15, 2016 email on its privilege log and described it as "[e]mails from Eric Vestor, claims counsel at Rutledge & Associates to Ikenna Akotaobi of Fannie Mae regarding call from Ms. Getaw's daughter and insurance adjuster and discussing Alabama law . . . ."  (Doc. 113-1 at 6).

2. *The August 17, 2016 email sent by CIT's counsel to CIT that CIT then shared with Fannie Mae*

The second document at issue in Plaintiffs' motion to compel is an email sent to CIT by its counsel that CIT later forwarded to Fannie Mae.

On August 3, 2016, Plaintiffs' attorney reached out to CIT just as she previously did to Fannie Mae. She sent an email to a CIT Bank employee that stated: "[w]e are in the process of establishing Ms. Getaw's estate (if necessary) in order to obtain the excess of the sale of Ms. Getaw's property in Bessemer, Alabama. . . . Please accept this email as my request for a formal accounting of the proceeds of the sale of said property . . . . Simply, we believe there is a balance to be due the estate and we are trying to locate those funds." (Doc. 105-13 at 2).

Then, on August 17, 2016, CIT's outside counsel, Rebecca Redmond, sent an email to CIT "attaching Alabama case law and discussing insurance benefits." (Doc. 105-2 at 8). This email is the second document at issue in the motion to compel here.

On October 4, 2016, CIT sent an email to Fannie Mae that stated, "[p]lease see counsel's response and analysis below. CIT's position is based on this legal opinion, but you may wish to obtain your own opinion." (Doc. 115-3 at 2). Below this statement, CIT copied and pasted the August 17, 2016 email from Ms. Redmond. CIT produced the October 4, 2016 email but redacted the information from Ms. Redmond on the grounds of attorney-client privilege.

C.      The Motion to Compel

Plaintiffs asserted in their motion to compel, in the supplement to that motion, at the hearing on the motion to compel, and in their post-hearing brief that CIT has no grounds to withhold the two emails described above because CIT and Fannie Mae waived any attorney-client privilege that attached to those emails by sending the emails to each other.  CIT responded that it and Fannie Mae shared a common legal interest and thus did not waive the attorney-client privilege by sharing the emails with each other under Alabama's common interest doctrine. Plaintiffs, in turn, replied that the common interest doctrine does not apply in this case because the doctrine applies *only* to attorney-client communications made in the presence of an interested third party.

The court reviewed *in camera* the two emails at issue and the motion to compel is ripe for resolution.

## III.  ANALYSIS

The attorney-client privilege under Alabama law grants a client the right to "refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client . . . between the client or a representative of the client and the client's attorney or a representative of the attorney . . . ."  Ala. R. Evid. 502(b).

But the attorney-client privilege is subject to waiver. For example, and most relevant to this case, a client waives the attorney-client privilege if he "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." Ala. R. Evid. 510(a). Particularly, a client generally waives the attorney-client privilege if he shares confidential communications made between him and his attorney with non-client third parties. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Hatas*, 252 So. 2d 7, 27 (Ala. 1971).

The rule that a client may waive the attorney-client privilege by sharing otherwise privileged communications flows from the coexisting goals of discovery and the attorney-client privilege. On one hand, Federal Rule of Civil Procedure 26(b)(1) establishes a broad scope of discovery in which the parties may obtain *any* nonprivileged and relevant matter to "allow the parties to develop fully and crystalize concise factual issues for trial," "prevent prejudicial surprises," and "conserve precious judicial energies." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973); *see Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that Fifth Circuit decisions handed down before the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit). On the other hand, the attorney-client privilege prevents discovery of confidential communications made between attorney and client to "encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*,

449 U.S. 383, 389 (1981).

But, generally, if a client discloses communications made between him and his attorney, then those communications are no longer confidential. *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987). Consequently, no rationale then exists to exclude the communications from discovery. *See id.* ("[A]t the point where attorney-client communications are no longer confidential, i.e., where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege.").

But Alabama law recognizes that the disclosure of confidential attorney-client communications to a third party in certain narrow circumstances does not always defeat the confidential nature of those statements and the communications remain privileged to fulfill the purpose of the attorney-client privilege. *See, e.g.*, *Hatas*, 252 So. 2d at 28 (finding that privileged communications made between an attorney and his client in the presence of a third party remain privileged when the third party is the same attorney's client or has a legal interest in the subject matter discussed). The common interest doctrine provides that if counsel communicates with his client in the presence of a third party who has "a sufficient common legal interest in the subject matter discussed," then those communications remain confidential and thus privileged. *Crenshaw v. Crenshaw*, 646 So. 2d 661, 663 (Ala. 1994).

Of course, the attorney-client communications at issue in this case did not occur in the presence of a third party. Rather, counsel communicated with his client via email and then the client shared the email with a non-client third party. This case then raises the question of whether the breadth of the narrow circumstances of the common interest doctrine covers a client's sharing of his attorney's written communications with another person who has a strong common legal interest in the subject matter of the communications. For the following reasons, the court finds that it does.

Neither the Alabama Supreme Court nor the Eleventh Circuit has addressed whether the common interest doctrine applies to privileged communications made between an attorney and his client that the client then shares with a third party who has a common legal interest outside the presence of counsel. Instead, the Alabama Supreme Court has only discussed the common interest doctrine in cases where an attorney communicated with his client *in the presence of* third parties. *See Lynch*, 968 So. 2d at 16; *Crenshaw*, 646 So. 2d at 663; *Hatas*, 252 So. 2d at 28. For this reason, Plaintiffs assert that the common interest doctrine *only* applies to attorney-client communications made in the presence of a third party and thus does not protect the emails at issue in this case.

Although no Alabama Supreme Court case is directly on point, and the Alabama Supreme Court has so far only applied the common interest doctrine to

facts different from the facts of this case, the Alabama Supreme Court has never held or suggested that the common interest doctrine *only* applies to communications made in the presence of a third person. And case law from the Alabama Supreme Court, the Seventh Circuit, and colleagues on this court provide convincing arguments that the common interest doctrine applies to privileged attorney-client communications that the client discloses to a third party who shares a sufficiently common legal interest.

The Alabama Supreme Court justified the existence of the common interest doctrine in *Hatas*. *See* 252 So. 2d at 27. In *Hatas*, a wrongful death case arising from a car accident, one of the three defendants in that case, Edward Partin, attended a conference with another person, Ms. Kelly, and Ms. Kelly's attorney. Mr. Partin was seeking legal advice from Ms. Kelly's attorney in connection with the car accident that formed the basis for the claims in *Hatas*. And the FBI had questioned Ms. Kelly about Mr. Partin's connection to the car accident. So, according to the Alabama Supreme Court, Mr. Partin and Ms. Kelly had a common legal interest in the matters discussed at the conference. *Id.* at 28.

At trial in *Hatas*, an attorney asked Mr. Partin to testify about statements made at the conference. The trial court sustained an objection to the testimony and prevented Mr. Partin from testifying because the trial court found that the attorney-client privilege protected the statements from disclosure. *Hatas*, 252 So. 2d at 27.

And the trial court ultimately entered judgment on the jury verdict in favor of the plaintiff. *Id.* at 11.

One of the other defendants in *Hatas*, the International Brotherhood of Teamsters, appealed. International asserted that the trial court erred in sustaining the objection to Mr. Partin's testimony because, according to International, Mr. Partin waived the attorney-client privilege over statements made at the conference by communicating in the presence of a third party, Ms. Kelly. The Alabama Supreme Court disagreed under the common interest doctrine. *Hatas*, 252 So. 2d at 28.

First, the Alabama Supreme Court noted that a client generally waives the attorney-client privilege over statements made between him and his attorney at a conference in the presence of a third person because "the presence of such third party defeats the confidential nature of the conference and thereby the privilege." *Hatas*, 252 So. 2d at 27. But the Alabama Supreme Court found that this waiver rule and the rationale supporting it does not apply "when the third person is also a client as to the subject matter discussed in the conference *[o]r has a common interest in the matters discussed*." *Hatas*, So. 2d at 27 (emphasis added). So, because Mr. Partin and Ms. Kelly shared a common legal interest in the investigation into the car accident resulting in death, the Alabama Supreme Court found that "the matters discussed at that conference were . . . confidential and

accordingly constituted privileged communications as to strangers to the conference." *Id.* at 28.

The court sees no rational reason to limit the common interest doctrine to only privileged communications made directly in the presence of a third party. If two parties share legal interests, then, according to the Alabama Supreme Court in *Hatas*, a communication that is privileged as to one party remains privileged when disclosed to the other party. Disclosing the privileged attorney-client communications outside the presence of counsel does not change the nature of the parties' shared interests. So the court finds that privileged attorney-client communications can remain privileged when the client shares those communications outside the presence of counsel with a third party who shares a common legal interest.

Here, CIT and Fannie Mae share a common legal interest in defending their legal rights to the insurance proceeds at issue in this case. CIT and Fannie Mae each solicited the legal advice contained in the two emails at issue only after Plaintiffs' counsel requested an accounting and informed them that she was seeking a balance from the foreclosure sale due to the estate. So, CIT and Fannie Mae shared the emails with each other only after they became united in their common goal to defend their asserted legal rights against Plaintiffs' claims. Thus, the common interest doctrine protects the emails from disclosure.

Though not binding on this court, an opinion issued by the Seventh Circuit is closely on point and supports the court's conclusion that the common interest doctrine applies to privileged attorney-client communications that the client shares outside the presence of counsel with a third party who has a common legal interest. *See United States v. BDO Seidman, LLP*, 492 F.3d 806, 814–17 (7th Cir. 2007). Similar to this case, *Seidman* involved a disclosure of written attorney-client communications to a third party; that case did *not* involve attorney-client communications made orally in the presence of a third party. *See id.* at 813.

In *Seidman*, the IRS was investigating the defendant-accounting firm, BDO, for failing to disclose potentially abusive tax shelters. A partner at BDO sent a memorandum to the firm's outside counsel requesting legal advice on pending IRS regulations. The IRS asserted that BDO waived the attorney-client privilege over the memorandum because a third party—a law firm that did not represent BDO, Jenkens & Gilchrist—received a copy of the memorandum. The district court in *Seidman* noted that the record was not clear as to how Jenkens & Gilchrist received the memorandum, but that issue had no bearing on whether BDO waived the attorney-client privilege. 492 F.3d at 813.

The district court in *Seidman* found that BDO did not waive the attorney-client privilege over the memorandum because the memorandum related to a common legal interest shared between Jenkens & Gilchrist and BDO. *Seidman*,

492 F.3d at 814.  The district court noted that Jenkens & Gilchrist and BDO jointly

served the same clients on the same or related tax matters: Jenkens & Gilchrist as

attorney and BDO as accountant.  *Id.*  So, the district court found that the two

entities "shared a common legal interest 'in ensuring compliance with the new

regulation issued by the IRS,' . . . and in making sure that they could defend their

product against potential IRS enforcement actions."  *Id.* at 816.  Thus, the district

court found that the common interest doctrine prevented waiver of the attorney-

client privilege over the memorandum.  *Id.*  The Seventh Circuit agreed.  *Id.*

In affirming the district court's decision, the Seventh Circuit applied the

federal common interest doctrine that was effectively identical to the Alabama

common interest doctrine.  *Seidman*, 492 F.3d at 815–16.  The Seventh Circuit

stated that "the common interest doctrine extends the attorney-client privilege to

otherwise non-confidential communications in limited circumstances.  For that

reason, the common interest doctrine only will apply where the parties undertake a

joint effort with respect to a common legal interest, and the doctrine is limited

strictly to those communications made to further an ongoing enterprise."  *Id.*  So,

like the Alabama Supreme Court in *Hatas*, the Seventh Circuit did *not* limit the

common interest doctrine only to privileged communications made in the presence

of a third party.

Whether BDO disclosed the memorandum to Jenkens & Gilchrist in the

presence of counsel did not inform the Seventh Circuit's decision; the nature of their shared interests did. *See Seidman*, 492 F.3d at 816–817. The Seventh Circuit emphasized that the common interest doctrine would apply to the memorandum only if BDO and Jenkens & Gilhrist shared "a common *legal* interest to which the parties formed a common strategy." *Id.* at 816 (emphasis in original). And the Seventh Circuit found that the parties shared such a common legal interest, and the memorandum was thus protected under the common interest doctrine, because BDO and Jenkens & Gilchrist "undertook a consultation between their respective in-house counsel and BDO's outside counsel with respect to the legality of the proposed financial course of action they would recommend to their common clients." *Id.* at 817.

Similarly, in this case, CIT and Fannie Mae shared with each other the emails at issue while undertaking a joint effort to defend their legal interests in the insurance proceeds in response to Plaintiffs' counsel's request for an accounting and acknowledgment that she would pursue a balance due to the estate. So, applying the same reasoning as in *Seidman*, the common interest doctrine protects those emails from disclosure.

Also, two unpublished opinions from colleagues on this court discussed below support the court's conclusion. In one case, the court applied in *dicta* the federal common interest doctrine to facts similar to this case. And in the other

case, the court implied that the common interest doctrine could protect privileged attorney-client communications shared outside the presence of counsel with third parties who have a common legal interest.

First, in *In re Blue Cross Blue Shield Antitrust Litig.*, Judge Proctor wrote for this court in *dicta* that the federal common interest doctrine would protect privileged attorney-client communications that, like the emails at issue in this case, were shared outside the presence of counsel. 2017 WL 9807442, at *6 (N.D. Ala. Aug. 31, 2017). Though the Alabama common interest doctrine applies in this case, Judge Proctor's definition of the federal common interest doctrine in *Blue Cross* subsumes the definition of the Alabama common interest doctrine. The federal common interest doctrine includes as elements that "the material is privileged" and "the parties had an identical legal and not solely commercial interest." *Blue Cross*, 2017 WL 9807442, at *3. Likewise, the Alabama common interest doctrine covers "privileged communications" made in the presence of "two or more persons interested in the same subject matter." *Hatas*, 252 So. 2d at 28. So the fact that federal law governed in *Blue Cross* does not impair the case's persuasiveness.

Blue Cross's counsel sent a document to the "Blue Caucus," a group of non-profit Blue Cross entities. The document contained legal advice about how to conduct Blue Caucus meetings in compliance with antitrust laws. Blue Caucus

members shared the document among themselves at a meeting, which raised the issue of whether the sharing waived the attorney-client privilege over that document.

Judge Proctor's definition of the federal common interest doctrine did not limit the doctrine to attorney-client communications made in the presence of third parties. He stated, "[t]he party claiming the [common interest] privilege must demonstrate that (1) the material is privileged, (2) the parties had an identical legal and not solely commercial interest, and (3) the communication was designed to further the shared legal interest." *Blue Cross*, 2017 WL 9807442, at *3 (quotations omitted). Judge Proctor found that each person who saw the document was a client of the same counsel so no person waived the attorney-client privilege, but he also stated in *dicta* that even if each person was not represented by the same counsel, then the document would still remain privileged as to each person because "[a]ll members of the Blue Caucus *shared an identical legal interest*, and not solely a commercial one, in the subject of the Antitrust Compliance document." *Blue Cross*, 2017 WL 9807442, at *6 (emphasis added). All members were united in their goal of conducting meetings in compliance with antitrust laws; so, when one member shared with another member confidential advice from counsel on how to further that common legal interest, that advice remained privileged. *Id.*

Similarly, in *Twin Pines Coal Co., Inc. v. Colonial Pipeline Co.*, a decision

written by Judge Blackburn and applying Alabama law, the court implied that the common interest doctrine *could* protect communications between counsel and his client that the client then shares with a third party who has a common legal interest.  2011 WL 13234102 (N.D. Ala. June 10, 2011).  There, the plaintiff held the mineral rights on land owned by non-party United States Steel Corporation.  Pursuant to a contract with the plaintiff, USSC received royalties from the sale of coal that the plaintiff mined on USSC's land.  The defendant operated a pipeline that traversed the same land and prevented the plaintiff from mining coal that the plaintiff could have sold.  The plaintiff sued the defendant for the value of the coal.

The plaintiff's counsel sent the plaintiff a letter that contained privileged communications about the status of the plaintiff's mining operations and the plaintiff's legal strategy concerning negotiations with the defendant for the value of the coal at issue.  The plaintiff then forwarded the letter to USSC.  The defendant asserted that, by forwarding the privileged communications to third-party USSC, the plaintiff waived the attorney-client privilege over the letter.

Judge Blackburn analyzed whether the common interest doctrine would protect the plaintiff from waiving the attorney-client privilege by sharing the letter from its counsel.  The court stated, "[w]hen the common interest doctrine is raised in the context of disclosure to a third party who is not also a client of the attorney, courts examine whether the third person is considered to have a common legal

interest in the subject matter of the communication." *Twin Pines*, 2011 WL

13234102, at *4 (citing *Lynch*, 968 So. 2d at 16; *Crenshaw*, 646 So. 2d at 663;

*Hatas*, 252 So. 2d at 28; and *Hope For Families and Community Service, Inc. v.

Warren*, 2009 WL 1066525, at *14 (M.D. Ala. Apr. 21, 2009), citing in turn

*Seidman*, 492 F.3d at 813–17).  So, as in *Seidman* and *Blue Cross*, the court

analyzed the common interest doctrine in circumstances similar to those in this

case in which an attorney's client shared privileged communications with a third

party outside the presence of the attorney.

Judge Blackburn ultimately found that the common interest doctrine did not

apply in *Twin Pines*, but only because the plaintiff and USSC did not share a

common *legal* interest.  *Twin Pines*, 2011 WL 13234102, at *6.  Instead, the

plaintiff and USSC only shared a common *financial* interest in the lawsuit because,

if the plaintiff succeeded in its suit against the defendant, then the plaintiff and

USSC would both maximize their recovery of royalties for coal mined on USSC's

land.  *Id.*  So, as in *Blue Cross*, the fact that the client shared privileged attorney-

client communications with a third party did not by itself prevent the application of

the common interest doctrine.  The disqualifier was the plaintiff and USSC's lack

of a common *legal* interest, not the manner by which the plaintiff disclosed the

attorney-client privileged material to USSC.

But that disqualifier does not exist in this case.  CIT and Fannie Mae shared

a *legal* interest, not solely a financial interest, in the matters discussed in the two emails that they shared with each other. Both entities had to defend their asserted legal rights to the insurance proceeds and they reasonably understood Plaintiffs' counsel's email to communicate that Plaintiffs would pursue litigation if CIT or Fannie Mae staked a legal claim to the insurance proceeds.

Based on the several persuasive authorities analyzed above, the court finds that a client does not waive the attorney-client privilege over communications from his attorney that the client then discloses to a third party in furtherance of a common legal interest. The common interest doctrine does not, as Plaintiffs argue, apply only to attorney-client privileged communications made in the presence of a third party.

Here, CIT and Fannie Mae share a common legal interest in defending their rights to the insurance proceeds at issue in this case in response to Plaintiffs' counsel's request for an accounting and acknowledgment that she would pursue a balance due to the estate. Both the May 15, 2016 email sent by Fannie Mae's counsel to Fannie Mae and the August 17, 2016 email sent by CIT's counsel to CIT, which the court reviewed *in camera*, contain legal advice concerning the parties' claims to the insurance proceeds. So CIT and Fannie Mae shared the privileged emails with each other in furtherance of their common legal interest and neither party waived the attorney-client privilege over the emails under the

common interest doctrine.  Thus, the attorney-client privilege precludes the disclosure of the two documents subject to Plaintiffs' motion to compel.

## IV.    CONCLUSION

For the reasons stated above, by separate order, the court will **DENY** Plaintiffs' motion to compel.

**DONE** and **ORDERED** this 9th day of January, 2020.

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE