FILED
2020 Aug-27  AM 11:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEANETTE BENNETT, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **2:18-CV-00852-KOB** |
| **CIT BANK, N.A., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>**MEMORANDUM OPINION**</u>

This case arrived in this court after what can only be described as, to borrow the title of a renowned children's book series, "a series of unfortunate events." *See, e.g.,* Lemony Snicket (aka Daniel Handler), *The Bad Beginning* (*A Series of Unfortunate Events,* 1st in the series) (Harper Collins) (1999).  In *A Series of Unfortunate Events*, the remarkable Baudelaire children, orphaned by a fire at their parents' mansion, must engage in a constant battle of wits against their guardian, the dastardly Count Olaf, to retain their rightful inheritance.  Not unlike the Baudelaire children, the adult Plaintiffs in this case found themselves confronted with the exigencies of the loss of a parent, the loss of a property, a fire, and issues of inheritance.

But, the Plaintiffs' situation in this case lacks any of the whimsy and humor of the children's books.  Instead of detailing feats of cleverness to outwit a

villainous guardian, this case tells the tale of plaintiffs engaged in lengthy litigation with financial institutions over an insurance payout.  Additionally, it appears that the unfortunate events besetting the Plaintiffs must continue because the Plaintiffs cannot show entitlement to summary judgment, and, in fact, the Defendants can show entitlement to summary judgment on all but one of the Plaintiffs' claims.

The series of unfortunate events that led the Plaintiffs Jeanette Bennett and Maggie Bell to court began when their mother, Catherine Getaw, took out a reverse mortgage on her home.  Ms. Getaw then passed away after devising her home to the Plaintiffs.  One of the Defendants in this case, CIT Bank, NA., notified the Plaintiffs that it was going to foreclose on the house pursuant to the reverse mortgage.  But prior to the foreclosure sale, a fire damaged the property.

Before any insurance proceeds from the fire could be paid, the property sold at foreclosure to another Defendant, the Federal National Mortgage Association ("Fannie Mae").  Both the Plaintiffs and Fannie Mae—in concert with CIT—made insurance claims for the fire damage.  Eventually, Fannie Mae obtained an insurance payout for the fire damage after CIT cashed a check made out to both CIT (under the name "Financial Freedom") and the estate of Ms. Getaw.  CIT remitted the funds to Fannie Mae after cashing the check; however, Fannie Mae later sent around $11,000 of the payout back to CIT to refund to the Plaintiffs.  CIT refunded that portion of the insurance proceeds to Ms. Getaw's estate, but Fannie

Mae still holds the majority of the insurance proceeds.

The Plaintiffs brought the instant lawsuit and filed an amended complaint alleging that Fannie Mae, CIT, N.A., and CIT Group, Inc.,[1] converted the insurance proceeds and seeking a declaratory judgment of their entitlement to the insurance proceeds.  At this juncture, the case comes before the court on cross-motions for summary judgment.  The Plaintiffs seek summary judgment solely on the issue of liability on their conversion claims, arguing that they are the only ones entitled to the insurance proceeds at issue because Fannie Mae, with CIT's help, wrongfully converted them.  (Doc. 96, doc. 97).  Fannie Mae and CIT separately move for summary judgment on all the Plaintiffs' claims, arguing that the Plaintiffs cannot establish conversion, punitive or emotional distress damages, or entitlement to the insurance proceeds at issue in this case.  (Doc. 119, doc. 125).

After considering the submissions of the parties and the evidence of the record, the court will DENY the Plaintiffs' motion for summary judgment because they cannot meet the requirements to make a claim for conversion against any of the Defendants; this court has already dismissed the conversion claims against CIT, (doc. 103), and the Plaintiffs cannot show identifiable, convertible funds to make a claim against Fannie Mae.

The court will GRANT IN PART and DENY IN PART Fannie Mae's

---

[1] Because the Plaintiffs allege the same facts against CIT, N.A. and CIT Group, Inc., the court will refer to them collectively as "CIT."

motion for summary judgment, because Fannie Mae is entitled to summary judgment on the Plaintiffs' conversion claim, but genuine issues of material fact regarding who had an insurable interest in the property at issue preclude summary judgment on the Plaintiffs' claim for declaratory judgment. So, the court could still potentially declare the Plaintiffs the rightful owners of the insurance proceeds. Finally, the court will GRANT CIT's motion for summary judgment because no justiciable controversy exists between the Plaintiffs and CIT at this time, as CIT claims no interest in the insurance claims at issue.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiffs are heirs of their mother Catherine Getaw and the personal representatives of her estate. In November 2005, Ms. Getaw executed a promissory note that was secured by a reverse mortgage that encumbered her home in Birmingham, Alabama. A homeowner's property insurance policy issued by Foremost Insurance Company covered the house. The insurance policy named Ms. Getaw as the insured and Financial Freedom, a division of OneWest, as mortgagee. Before the foreclosure and insurance issues in this case arose, Financial Freedom became part of CIT.

Ms. Getaw died in April 2015. Her will devised her home to the Plaintiffs without limitations; so, under Ala. Code § 43-2-830(c), the Plaintiffs took the home subject to the reverse mortgage.

4

CIT then sent a letter to the Plaintiffs that included the following option for paying off the reverse mortgage loan:

> [T]he mortgage will be released and <u>no deficiency judgment will be taken</u> if the property has no junior liens and is sold for at least 95 percent of the appraised value with the net proceeds paid to the investor, even if the debt is greater than the appraised value.

(Doc. 3 at ¶ 17) (emphasis in original).

In October 2015, CIT initiated foreclosure proceedings on the home. Then, on October 28, 2015, a fire burned the home. Plaintiffs promptly notified CIT of the fire and filed an insurance claim for fire damage with Foremost. (Doc. 3 at ¶¶ 19–21).

On November 2, 2015, CIT sold the property to Fannie Mae at a foreclosure sale. After the sale, Fannie Mae, through its attorney, contacted CIT regarding insurance information for the home. Then, on February 11, 2016, Fannie Mae filed an insurance claim with Foremost for the fire damage to the home.

Foremost responded by requesting evidence from Fannie Mae related to any lien holder's interest in the home, the insurance claim, and any resulting proceeds. Fannie Mae then requested the same information from CIT, as well as information regarding the foreclosure deed, mortgage, and assignments. (Doc. 3 at ¶¶ 29–32).

On February 22, 2016, Foremost sent a $62,262.13 two-party check to Fannie Mae's attorney made payable to

"Financial Freedom, a Division of Onew [sic]

Estate of Catherine Getaw"

 (Doc. 3 at ¶¶ 17, 33).

Fannie Mae's attorney forwarded the check to CIT, who cashed the check and later remitted the funds to Fannie Mae.  The Plaintiffs demanded that CIT and Fannie Mae give all the proceeds to Plaintiffs.  Fannie Mae and CIT released around $11,000 of the insurance proceeds to the Plaintiffs, but kept the rest, purportedly to offset remaining debt.  This lawsuit followed.

Originally, the Plaintiffs brought claims against the Defendants for declaratory judgment, conversion, fraud and wantonness—all regarding the insurance proceeds.  (Doc. 3).  Fannie Mae and CIT both filed motions to dismiss, and the court dismissed the Plaintiffs' claims for fraud and wantonness as inadequately pled.  (Doc. 35, doc. 36).

Plaintiffs then filed an amended complaint against the Defendants with causes of action for declaratory judgment, conversion, and for breach of contract by Foremost.  The court later dismissed the complaint against Foremost because the Plaintiffs complaint did not adequately state a claim for breach of contract. (*See* Doc. 102).

The remaining claims in the operative amended complaint center around the allegation that CIT endorsed and deposited the insurance proceeds check into its account without Plaintiffs' signatures as personal representatives of their mother's

6

estate, then transferred some or all of those funds to Fannie Mae.  (Doc. 63 at ¶¶ 103, 108).  The Plaintiffs allege conversion of the insurance proceeds against both CIT and Fannie Mae, including punitive and emotional distress damages, and seek declaratory judgment regarding their entitlement to the proceeds.

CIT filed a partial motion to dismiss, arguing that the Plaintiffs had not adequately stated a claim for conversion and had not stated any specific allegations against CIT Group, as opposed to its wholly owned subsidiary CIT Bank, N.A. (Doc. 73).  The court granted CIT's motion to dismiss the Plaintiffs' conversion claim against it because the Plaintiffs had not alleged that it wrongfully deposited the check, as the check bore one of CIT's names.  (Doc. 103).  But the court denied the motion to dismiss the claims against CIT Group, as the Plaintiffs' allegations included both CIT Bank and its parent company, CIT Group.  (*Id.*).  The Plaintiffs subsequently filed a motion for reconsideration, which this court denied.  (Doc. 112; doc. 137; doc. 138).

While CIT's motion for partial dismissal was pending before this court, the Plaintiffs filed a motion for summary judgment on their conversion claims against CIT and Fannie May.  After the court issued its order of partial dismissal dismissing the conversion claim against CIT, the Defendants each filed cross-motions for summary judgment on all of the Plaintiffs' remaining claims.

## II.    STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and, if not, whether the moving party is entitled to judgment as a matter of law.  *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  But, inferences can create genuine issues of material

fact. *Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial.*'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See id.* at 255.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to

judgment as a matter of law.  *See* Fed. R. Civ. P. 56.

## III.   ANALYSIS

### A.   <u>Conversion</u>

The Plaintiffs move for summary judgment for their conversion claims against both CIT and Fannie Mae.  (Doc. 96).  But, because the court has dismissed the Plaintiffs' conversion claim against CIT, the court now focuses only on the Plaintiffs' motion for summary judgment regarding Fannie Mae's alleged conversion and Fannie Mae's cross-motion for summary judgment on the same issue.

In their brief in support of summary judgment, the Plaintiffs argue that they were entitled to the insurance proceeds from the Foremost insurance policy on Ms. Getaw's home as Ms. Getaw's heirs, but Fannie Mae converted the insurance proceeds despite having no right to them and having no debt due from Ms. Getaw's estate.  (Doc. 97).  Specifically, the Plaintiffs argue that Fannie Mae was not a loss payee under the insurance contract because Fannie Mae was not listed on the insurance policy as a mortgagee, and, so, was not entitled to any payment under the policy.  The Plaintiffs add that, even if Fannie Mae had been a listed mortgagee potentially entitled to payment, the foreclosure of Ms. Getaw's home extinguished any mortgage interest.

The Plaintiffs emphasize throughout their brief that Fannie Mae is not

entitled to the insurance proceeds because it was not listed on the Declarations page of the insurance policy.  The Plaintiffs assert that Fannie Mae wrongfully took dominion over the insurance proceeds and continues to hold the proceeds to the exclusion of the Plaintiffs' ownership interest.  The Plaintiffs note in their brief that they do not seek summary judgment regarding damages for their conversion claims.

In its cross-motion for summary judgment, Fannie Mae argues that the same reasons that the court dismissed CIT's conversion claim also apply to Fannie Mae; that CIT did not convert the check at issue, so it could not have converted the check either.  (Doc. 120 at 28).  Fannie Mae further asserts that the money that it allegedly converted does not qualify as specific and identifiable, as required to make a claim for conversion.  Fannie Mae adds that both it and CIT had a legitimate interest in the insurance proceeds, so they could not have converted them.  Fannie Mae also asserts that it should be entitled to summary judgment on the Plaintiffs' claims for punitive and emotional distress damages on their conversion claim.

The Plaintiffs reply by repeating their arguments that Fannie Mae has no right to the proceeds because Fannie Mae was not party to the insurance policy, but continues to keep them from the Plaintiffs, so Fannie Mae has converted the insurance proceeds.  (Doc. 130).  The Plaintiffs also repeat that Ms. Getaw was not

liable for any deficiency in her reverse mortgage after foreclosure, so the insurance proceeds could not rightfully go to remedy any outstanding debt. The Plaintiffs also argue that the insurance proceeds qualify as specific and capable of identification because it was directly traceable, as it was referred to as "insurance proceeds" throughout its trip though the banks. (*Id.* at 23). The Plaintiffs go on to assert that material issues of fact preclude summary judgment on their damages claims.

Fannie Mae filed a reply once again asserting, among other things, that the insurance proceeds were not specific and identifiable. (Doc. 131).

To state a claim for conversion, a plaintiff must show "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse." *Ott v. Fox*, 362 So. 2d 836, 839 (Ala. 1978). "The Alabama Supreme Court has repeatedly held that an action for the conversion of money is improper unless there is earmarked money or specific money capable of identification." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303 (11th Cir. 2010).

In this case, Foremost sent an insurance proceeds check for more than $60,000 to Thomas Rutledge, an attorney for Fannie Mae. (Doc. 98-13 at 28–29). Foremost had made out the check to both the estate of Ms. Getaw and "Financial Freedom, a division of Onew." (*Id.* at 29–30). CIT had previously acquired OneWest, one of the named parties on the check. (Doc. 98-4 at 7–8). CIT

deposited the check into a Wells Fargo account owned by CIT, then transferred the sum of the insurance proceeds to Fannie Mae. (Doc. 98-13 at 30; doc. 98-1 at 31). Fannie Mae later sent roughly $11,000 back to CIT to remit to the estate of Ms. Getaw. (Doc. 98-1 at 39). CIT sent that money on to Ms. Getaw's estate.

As a preliminary matter, this court has already concluded that CIT did not convert the insurance proceeds check. (Doc. 103). Specifically, the court found that the Plaintiffs had not adequately alleged that CIT had converted the insurance proceeds check because, pursuant to Alabama law and the UCC, CIT could properly deposit a check made out alternatively to it and the Plaintiffs without the Plaintiffs' consent. Thus, the Plaintiffs had not alleged the requisite "wrongful" exercise of dominion over the proceeds by CIT to constitute conversion. (*Id.* at 6, 8); *Limbaugh v. Pierce, Fenner & Smith, Inc.*, 732 F.2d 859, 863 (11th Cir. 1984).

CIT, having obtained the funds without converting them, then transferred the sum of the proceeds to Fannie Mae. So, the court cannot help but note that Fannie Mae's acquisition of the funds through CIT's voluntary transfer also lacks the hallmarks of a wrongful exercise of dominion over the proceeds. *See Limbaugh v. Pierce, Fenner & Smith, Inc.*, 732 F.2d at 863. Under Alabama law, "[t]he bare possession of property without some wrongful act in the acquisition of possession, or its detention, and without illegal assumption of ownership or illegal user or misuser, is not conversion." *Standifer v. Best Buy Stores, L.P.*, 364 F. Supp. 3d

1286, 1297 (N.D. Ala. 2019) (citing *Clardy v. Capital City Asphalt Co.*, 477 So. 2d 350, 352 (Ala.1985)).  In this case, Fannie Mae did not wrongfully acquire the funds because CIT voluntarily transferred the funds to Fannie Mae after rightfully depositing the check without any conversion.  Further, even if Fannie Mae's actions could be construed as wrongful detention or assumption of ownership, the Plaintiffs still cannot make out a successful claim for conversion because the funds were not separate and identifiable.

Alabama law interprets "specific money capable of identification" literally. "Money is specific and capable of identification where, for example, it is 'money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.'" *Edwards*, 602 F.3d at 1304 (emphasis omitted) (quoting *Gray v. Liberty Nat. Life Ins. Co.*, 623 So. 2d 1156, 1160 (Ala. 1993)).

Specifically identifying a certain *amount* of money is not enough: "[i]dentifiable amounts of money are one thing, specific money capable of identification is another. . . .  [A]n action for the conversion of money requires the money itself, not just the amount of it, to be specific and capable of identification." *Edwards*, 602 F.3d at 1304.  For example, "money directly traceable to a special account is sufficiently identifiable to support an action for conversion."  *Greene*

*Cty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 899 (Ala. 1991).  In some

circumstances, depending on the facts, "[c]hecks, and the property rights

represented thereby," can be specific money capable of identification.  *Crown Life*

*Ins. Co. v. Smith*, 657 So. 2d 821, 823 (Ala. 1994).

In arguing that the insurance proceeds in this case are separate and

identifiable, the Plaintiffs point to the fact that Fannie Mae referred to the money in

their own records as the "proceeds" from the policy, and the sum of the money

remained the same during the transfer from Foremost to CIT to Fannie Mae.  To

support their argument, the Plaintiffs rely on multiple cases in which deposits into

accounts still constituted specific and identifiable funds.  However, those cases

prove inapposite here.

The Plaintiffs cite two cases dealing with defendants committing conversion

by directly depositing into their own accounts checks drawn on accounts to which

they were not entitled.  In one, the Alabama Supreme Court found that conversion

could exist where someone forged signatures on refund checks, received the funds,

and deposited the funds in his own account.  *Crown Life Ins. Co.*, 657 So. 2d at

823–24.  In another, the Alabama Supreme Court held that "pre-authorized checks"

drawn against an insured's checking account could qualify as identifiable for the

purposes of a conversion claim.  *Gray v. Liberty Nat. Life Ins. Co.*, 623 So. 2d

1156, 1160 (Ala. 1993).  These situations defy analogy to the situation with Fannie

Mae.  Fannie Mae did not deposit a check; Fannie Mae received funds transferred

willingly by CIT after CIT legally deposited a check.  Thus, Fannie Mae's

assertion of control over the funds lacks a check or other instrument to act as a

vehicle for the identification of specific funds.  So, it is CIT's actions, not Fannie

Mae's that exhibit similarity to *Crown* and *Gray*; but, as discussed above, this

court has already found that CIT did not convert the check because it had the right

to deposit it.  (Doc. 103 at 8); *see also* Ala. Code § 7-3-420.  Where even CIT's

actions do not qualify as conversion in light of *Crown* and *Gray*, Fannie Mae's

actions do not qualify as conversion either.

The Plaintiffs also rely on cases where the identifiability of the funds hinged

on specific identification of the accounts that either provided the specifically

delineated source of the funds or the specific destination of the funds.  In *Crown*,

the Alabama Supreme Court addressed another instance of conversion in which the

defendant took out loans against specific life insurance policies, which reduced the

value of the policies.  *Crown*, 657 So. 2d at 824.   The funds for the policies were

in one larger account of the insurer that also had funds for other policies, but the

court found that the funds were specific and identifiable because "the funds

available under each policy were specifically identified by the policy number and

could have been easily retrieved for the [victims] under the policy number. There

is no doubt that [the insurer], if called upon to do so, could easily identify the

specific value of each policy under the policy numbers." *Crown*, 657 So. 2d at 824.

Similarly, though at the other end of the transactional timeline, the Alabama Supreme Court held in another case that a plaintiff could state a claim for conversion where "the defendants, through an intricate scheme involving bogus invoices and checks and money orders, converted to their own use funds that had been specifically deposited in" in a school lunchroom account. *Greene Cty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 899–900 (Ala. 1991). The court specifically emphasized the importance of the fact that the funds were "directly traceable to a special account." *Id.* at 900.

Both *Crown* and *Greene* show that money in an account can be specifically identifiable for the purposes of conversion, but only where the money has been somehow specifically segregated within an account or has been placed in a separate, identifiable account that did not contain other funds. The money in those cases had not become freely comingled so as to become "unidentifiable money in [a company's] checking account." *Citibanc of Alabama/Fultondale v. Tricor Energies, Inc.*, 493 So. 2d 1344, 1348 (Ala. 1986).

Alternatively, courts have held that, under Alabama law, money that is merely "a certain sum" rather than sequestered funds is not specific and identifiable for the purposes of conversion. *Edwards v. Prime, Inc.*, 602 F.3d

17

1276, 1304 (11th Cir. 2010). So, for instance, the Alabama Supreme Court held

that withholding wages did not qualify as conversion because the issue was the

return of an amount of money, not the specific, identical money. *Lewis v. Fowler,*

479 So.2d 725, 727 (Ala. 1985). Similarly, "[m]oney paid by an insurance

company to a hospital which had been assigned to the hospital by the plaintiff has

been determined as a matter of law not to be specific property which would

support an action of conversion." *Greene Cty. Bd. of Educ.*, 586 So. 2d at 898

(citing *Humana of Ala., Inc. v. Rice*, 380 So. 2d 862 (Ala. Civ. App. 1979), *cert.*

*denied*, 380 So. 2d 865 (Ala. 1980)). In short, an action "for the conversion of

money requires the money itself, not just the amount of it, to be specific and

capable of identification." *Edwards*, 602 F.3d at 1304.

In this case, the insurance proceeds are not sufficiently specific and

identifiable to support a claim of conversion against Fannie Mae. The check from

Foremost likely constituted specific and identifiable money when it went to CIT

because it was money from the specific account for Ms. Getaw's specific policy

that was embodied by the check. However, CIT then rightfully deposited the

check into a Wells Fargo account. The record reveals no indication that the money

was segregated or placed into a specific account as opposed to a general Wells

Fargo account owned by CIT. CIT then disbursed the sum of the insurance

proceeds—as opposed to passing along the specific check and the identical money

it represented—to Fannie Mae.  So, the claim against Fannie Mae more closely resembles the situation in *Lewis* than in *Crown* or *Green County Board of Education*.

As in *Lewis,* the money in this case is not specific and identifiable and the Plaintiffs cannot succeed on their claim for conversion against Fannie Mae.  Even viewing all of the facts and accompanying inferences of the claim in the light most favorable to the Plaintiffs, no genuine issue of material fact precludes summary judgment against the Plaintiffs because the Plaintiffs' claim fails as a matter of law.  *See*, 193 F.3d at 1282; Fed. R. Civ. P. 56.

So, the court will DENY the Plaintiffs' motion for summary judgment and GRANT Fannie Mae's cross-motion for summary judgment on the Plaintiffs' conversion claim.  Because the court finds Fannie Mae entitled to summary judgment on the Plaintiffs' conversion claim, the court need not address whether or not the Plaintiffs can recover punitive or emotional distress damages for their conversion claim.

## B.   <u>Declaratory Judgment</u>

In its motion for summary judgment, Fannie Mae briefly requests summary judgment on the Plaintiffs' declaratory judgment claim and seeks a declaration from this court of its entitlement to the insurance proceeds, minus roughly $11,000 that it has already determined should be remitted to the Plaintiffs.  (Doc. 119, doc.

120).  The Plaintiffs respond that Fannie Mae has not provided the necessary

evidence to prove that it owned the mortgage or was entitled to the insurance

proceeds.  (Doc. 130).

   CIT also filed a motion seeking summary judgment on the Plaintiffs'

declaratory judgment claim.  (Doc. 125).  CIT argues, among other things, that the

court should not grant any declaratory judgment against them because no

justiciable controversy exists between CIT and the Plaintiffs at this point.  The

Plaintiffs respond by again arguing that CIT has no entitlement to or interest in any

of the insurance proceeds.  (Doc. 132).  The Plaintiffs also challenge CIT's right to

service the mortgage.  CIT replies that no remaining controversy exists between

the parties because CIT holds none of the insurance proceeds and makes no claim

on the proceeds.  (Doc. 136).

   The Declaratory Judgment Act grants federal courts the discretion to declare

the rights of parties in actual controversies.  *Wilton v. Seven Falls Co.*, 515 U.S.

277, 286 (1995).  The Act provides that, "[i]n a case of actual controversy within

its jurisdiction, [. . .] any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration."  28 U.S.C. § 2201(a).

   Because the Declaratory Judgment Act limits the court's jurisdiction to

actual controversies, "[i]n all cases arising under the [Act], the threshold question

is whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995).  For an actual controversy to exist, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Even when an actual controversy exists, the court still has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286.  When determining whether to exercise its discretion, the court considers practicality, judicial efficiency, and the "facts bearing on the usefulness of the declaratory judgment remedy[] and the fitness of the case for resolution."  *Id.* at 288–89.

### 1. *CIT's Motion for Summary Judgment*

CIT argues, among other things, that the court should grant it summary judgment on the Plaintiffs' declaratory judgment claim because, as it makes no claim to any portion of the insurance proceeds, no justiciable controversy exists between CIT and the Plaintiffs.  The court agrees.

Whether an actual case or controversy exists to support the court's entry of a declaratory judgment varies on a case-to-case basis based on the totality of the circumstances.  *Atlanta Gas Light Co.*, 68 F.3d at 414.  "The controversy must be

21

more than conjectural"; it must actually involve legal relations of parties that have adverse legal interests, not hypothetical or academic facts. *Id.* A case can involve an actual controversy at its inception and then later become moot "when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Zinni v. ER Solutions, Inc.,* 692 F.3d 1162, 1166 (11th Cir. 2012) (internal quotation marks omitted). "A declaratory judgment devoid of 'sufficient immediacy and reality' cannot render a case justiciable." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 735 (11th Cir. 2018) (citing *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)).

Here, the case originally involved a justiciable controversy between CIT and the Plaintiffs over whether CIT converted the insurance proceeds from the Foremost policy and whether CIT was wrongfully retaining any of the proceeds. But, the controversy between the parties has since dissolved.

The court dismissed the conversion claim against CIT. Further, Fannie Mae—not CIT—holds the insurance proceeds except for the more than $11,000 of "excess insurance funds" that CIT released to Ms. Getaw's estate by check. (Doc. 125-1 at 9, 73). CIT no longer holds any of the insurance proceeds and, in fact, disclaims any interest. (Doc. 125). The Plaintiffs concede CIT's lack of interest in the proceeds, stating "CIT claims, and has, no interest in the Proceeds." (Doc. 132 at 29); (*see also* Doc. 130 at 9).

Because the court has dismissed the Plaintiffs' conversion claim and the Plaintiffs admit that CIT no longer has any interest in the insurance proceeds at issue, no actual legal controversy exists between the Plaintiffs and CIT; the question of CIT's claim to the proceeds has become merely academic and conjectural rather than concrete and immediate. *See Atlanta Gas Light Co.*, 68 F.3d at 414; *Gagliardi*, 889 F.3d at 735. Instead, the dispute over the proceeds now lies only between Fannie Mae and the Plaintiffs. Because no controversy remains between the Plaintiffs and CIT, the court finds that it lacks jurisdiction over the Plaintiffs' claim for declaratory judgment against CIT. *See Atlanta Gas Light Co.*, 68 F.3d at 414. Therefore, the court will GRANT CIT's motion for summary judgment and dismiss CIT Bank, N.A. and CIT Group, Inc. from this case.

   2. *Fannie Mae's Motion for Summary Judgment*

On the other hand, the court finds that a justiciable controversy still exists between the Plaintiffs and Fannie Mae over who should be entitled to the insurance proceeds from the Foremost insurance policy. So, a claim for declaratory judgment can survive. *See* 28 U.S.C. § 2201(a). Furthermore, genuine issues of material fact prevent the court from granting summary judgment to Fannie Mae on the Plaintiffs' declaratory judgment claims against Fannie Mae.

Fannie Mae's motion for summary judgment provides very little in the way

of explicit arguments as to why it should be granted summary judgment on Plaintiffs' declaratory judgment claim.  But Fannie Mae's brief shows that Fannie Mae asserts that it is entitled to the insurance proceeds because it was the rightful owner of and had an insurable interest in the reverse mortgage, so the proceeds could rightfully go to satisfy outstanding indebtedness that was not resolved by the foreclosure sale.  (Doc. 120 at 32).  Fannie Mae further contends that CIT had the right to foreclose as the mortgagee of record and holder of the original note endorsed in blank and had a right to collect the insurance proceeds on behalf of Fannie Mae as a named mortgagee on the Foremost insurance property.  (*Id.* at 34–35).

The Plaintiffs, in response, generally argue that Fannie Mae was not a loss payee for the insurance policy and that Fannie Mae had no interest in the insurance proceeds.  (Doc. 130).  In reply, Fannie Mae again argues that it owned the loan and that CIT, as the loan servicer, had a right to collect the insurance proceeds and remit them to Fannie Mae.  (Doc. 131 at 6).  However, a genuine issue of material fact exists regarding CIT's authority to foreclose on the property and obtain the insurance proceeds.

The policy language in Ms. Getaw's Foremost insurance policy in this case states that "[a]n insured loss will be payable to the mortgagees named on the Declarations Page, to the extent of their interest and in order of precedence."  (Doc.

63-4 at 27).  The policy lists "Financial Freedom, A Division of OneWest Bank FSB ISAOA" on the policy declarations page as the mortgagee on the property. (*Id.* at 4).  The record shows and the parties do not dispute that Financial Freedom now falls under the umbrella of CIT.  Accordingly, to the extent that it had an interest, CIT could recover under the Foremost insurance policy.  (Doc. 63-4 at 27).

The lingering genuine issue of material fact in this case arises from the question of whether CIT had a valid interest as a mortgagee that allowed it to collect the insurance proceeds and pass them on to Fannie Mae.  As an initial matter, the evidence submitted by the parties shows conflicting information regarding whether CIT had a valid, current assignment granting it the right to service the mortgage note.  CIT and Fannie Mae produced recorded notices of assignment suggesting that CIT did in fact possess an interest in servicing the mortgage at the time of foreclosure.  (Doc. 125-1 at 34–43).  The documents show a train of transfers of servicing rights for the mortgage from Pacific Reverse to Financial Freedom and eventually to OneWest—which became part of CIT—in 2015.  But, the assignments do not clearly demonstrate the extent of CIT's interest and Fannie Mae's records list "Mortgage Assets Management, LLC" as the servicer of the loan during the time when the right to service the loan purportedly belonged to CIT.  (Doc. 98-2 at 34).  Accordingly, a material question of fact

remains regarding the existence and extent of CIT's interest in the mortgage.

Fannie Mae would be able to skirt the issue of the potentially tangled assignment if no issue of fact existed regarding CIT's possession of the original mortgage note, endorsed in blank.  Under Alabama law, a mortgage note qualifies as a negotiable instrument governed by Alabama's Uniform Commercial Code. *Summerlin v. Shellpoint Mortg. Servs.*, 165 F. Supp. 3d 1099, 1108 (N.D. Ala. 2016) (citing *Sturdivant v. BAC Home Loan Servicing, LP*, 159 So.3d 47, 55 (Ala. Civ. App. 2013)).  Pursuant to Alabama's U.C.C., a "person entitled to enforce" an instrument includes the holder of the instrument.  Ala. Code § 7-3-301.  A person is a holder of a negotiable instrument if the person possesses an instrument that is payable to the bearer, which includes an instrument endorsed in blank.  *Id.* § 7–1–201(21); *Id.* § 7–3–205(b).  Possession of a note endorsed in blank thus can show ownership.  *Thomas v. Wells Fargo Bank, N.A.*, 116 So. 3d 226, 233 (Ala. Civ. App. 2012).  But, in this case a genuine issue of material fact exists regarding whether CIT was in possession of the mortgage note, endorsed in blank, at the time of the foreclosure and the insurance payment.

Fannie Mae did produce a copy of the mortgage note endorsed in blank from Financial Freedom.  (Doc. 120-1 at 16).  However, when asked about the original note in deposition testimony, a corporate representative of CIT stated that "at some point [the note] was held within Financial Freedom," and that it was held by a

third-party custodian that the deponent could not name.    (Doc. 98-4 at 23–24).
The deponent also stated that they did not know if the servicing agreement gave
permission to house the original note with a third-party custodian.  (*Id.*).  The
evidence suggests, but does not show with complete certainty, that CIT held the
original note, and therefore had an interest in Ms. Getaw's property as a
mortgagee, at the time of foreclosure and the insurance payout.  The Plaintiffs
argue that CIT did not hold the original note at the time of foreclosure and the
insurance payout, and the evidence does not conclusively refute that argument.

In light of the evidence, when viewed in the light most favorable to the
Plaintiffs, Fannie Mae has not shown entitlement to summary judgment on the
Plaintiffs' claim for declaratory judgment because of the existence of genuine
issues of material fact regarding the ownership of the mortgage and rights to
foreclose.  *See* Fed. R. Civ. P. 56.  Accordingly, the court will DENY IN PART
Fannie Mae's motion for summary judgment regarding the Plaintiffs' declaratory
judgment claim.

## IV.   CONCLUSION

By separate order, the court will **DENY** the Plaintiffs' motion for summary
judgment on their conversion claims.  The court will **GRANT IN PART** and
**DENY IN PART** Fannie Mae's motion for summary judgment.  The court will
**GRANT** Fannie Mae's motion for summary judgment as to the Plaintiffs'

conversion claim, but will **DENY** summary judgment as to Plaintiffs' claim for declaratory judgment because of remaining genuine issues of material fact.

Finally, the court will **GRANT** CIT's motion for summary judgment, as no justiciable controversy exists between the Plaintiffs and CIT at this time.

Therefore, the court will **DISMISS** both CIT Bank, N.A. and CIT Group, Inc. from this case.

      **DONE** and **ORDERED** this 27th day of August, 2020.

_Karon O. Bowdre_

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE