UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JEANETTE BENNETT, et al., ] | |
| ] | |
|    Plaintiffs, ] | |
| ] | |
| v. ] | CIVIL ACTION NO. |
| ] | 2:18-CV-00852-KOB |
| CIT BANK, N.A., et al., ] | |
| ] | |
|    Defendants. ] | |

## MEMORANDUM OPINION

In 1846, Chief Justice John Bannister Gibson of the Pennsylvania Supreme Court pithily described a negotiable instrument as a "courier without luggage." *Overton v. Tyler*, 3 Pa. 346, 347 (Pa. 1846). "It is a requisite," he wrote, "that it be framed in the fewest possible words, and those importing the most certain and precise contract." *Id.* In 1894, the Alabama Supreme Court described a negotiable instrument as "carr[ying] on its face its own history, so that nothing can be alleged against it . . . other than what is there apparent." *Brown v. First Nat. Bank*, 15 So. 435, 436 (Ala. 1894).

Nowadays, negotiable instruments are governed by Article III of the Uniform Commercial Code, which has been adopted, with some modifications, by all states. Alabama's U.C.C. defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order." Ala. Code § 7-3-104(a). To be a negotiable instrument, paper (1) must be "payable to bearer or to order at the time it is issued or first comes into possession of a holder," (2) must be "payable on demand or at a definite time," and (3) cannot "state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." *Id.*

1

In the case at hand, the court is faced with the question of whether a reverse mortgage note is a negotiable instrument under Alabama's U.C.C. A reverse mortgage is "[a] mortgage in which the lender disburses money over a long period to provide regular income to the (usu. elderly) borrower, and in which the loan is repaid in a lump sum when the borrower dies or when the property is sold." Reverse Mortgage, Black's Law Dictionary (11th ed. 2019). Lenders may also disburse money in a lump sum; it does not have to be over a long period time. Unlike a regular, forward mortgage, a reverse mortgage increases the mortgagor's debt and decreases the mortgagor's equity. Reverse Mortgage Loans: Borrowing Against Your Home, AARP 3, 4 (2010), https://assets.aarp.org/www.aarp.org_/articles/money/financial_pdfs/hmm_hires_nocrops.pdf.

This case involves a dispute over who has rights to insurance proceeds on a home encumbered by a reverse mortgage that caught fire just before the foreclosure sale. The case involves several actors—Plaintiffs Jeanette Bennett and Maggie Bell, who were devised the home encumbered by the reverse mortgage by their mother, decedent Catherine Getaw; Defendant Fannie Mae, the owner of Ms. Getaw's loan and the purchaser of her home at the foreclosure sale; and CIT[1], the purported servicer of the loan owned by Fannie Mae.

The case comes before the court on Defendant Fannie Mae's "Motion to Reconsider This Court's Denial of Summary Judgment as to Plaintiffs' Claim for Declaratory Judgment" (doc. 144). In August 2020, this court denied summary judgment to Fannie Mae on Plaintiffs' declaratory judgment claim over who is entitled to the insurance proceeds; the court found that a genuine issue of material fact existed as to "CIT's authority to foreclose on the property and obtain the insurance proceeds" and remit them to Fannie Mae as servicer of Fannie Mae's loan

---

[1] As in prior opinions, the court refers collectively to CIT, N.A. and CIT Group, Inc. collectively as "CIT" throughout this opinion.

because the evidence did not clearly show that CIT had a valid assignment to service the mortgage note. (Doc. 139 at 25). The court found that "Fannie Mae would be able to skirt the issue of potentially tangled assignment *if no issue of fact existed regarding CIT's possession of the mortgage note, endorsed in blank*," because under Alabama's U.C.C., a holder of a note endorsed in blank may enforce the instrument. (*Id.* at 26) (emphasis added).

In its motion for reconsideration, Fannie Mae argues that it submitted evidence on summary judgment showing that CIT was the holder of the Note, endorsed in blank. (Doc. 144 at 2). Fannie Mae asks the court to "find that no genuine issue of fact exists, apply its prior statement of the law, and determine that as the possessor of the original note endorsed in blank, CIT had a right to collect the insurance proceeds." (*Id.* at 7). Plaintiffs responded to the motion (doc. 146), and Fannie Mae replied (doc. 147).

Several weeks after Fannie Mae's motion was under submission to the court, Plaintiffs, with the court's leave, filed a sur-reply, arguing *for the first time* that the Note involved in this case is not a negotiable instrument under Alabama's U.C.C. (Doc. 148). Fannie Mae responded to the sur-reply, arguing that the Note is a negotiable instrument and that, even if it is not, the Note is otherwise enforceable by a holder under Alabama law. (Doc. 150). Fannie Mae's motion for reconsideration is ripe for review.

Initially, the court faced the simple question of whether the summary judgment evidence Fannie Mae submitted showed that CIT held the Note endorsed in blank at the time of the foreclosure and fire. Now, the court faces a different question: whether the Note involved in this case is a negotiable instrument under Alabama's U.C.C. In its summary judgment opinion (doc. 139), the court assumed that, like most mortgage notes, the Note in this case was negotiable. Now that Plaintiffs have raised the issue and the court has carefully considered the matter, the

court concludes that the Note at issue in this case is *not* a negotiable instrument under Alabama's U.C.C. and, thus, CIT could not enforce the Note solely as holder of the Note endorsed in blank. The court further finds that CIT could not enforce the Note by virtue of holding the Note under other provisions of Alabama law. Thus, despite the evidence Fannie Mae submitted showing that CIT held the Note endorsed in blank, the court **DENIES** Fannie Mae's motion for reconsideration. The court *sua sponte* corrects its assumption in its summary judgment opinion that the Note involved in this case is a negotiable instrument falling under Alabama's U.C.C. that could be enforced by a holder of the Note endorsed in blank (doc. 139 at 26). The court's conclusion on summary judgment that a genuine issue of material fact exists as to "whether CIT had a valid interest as a mortgagee that allowed it to collect the insurance proceeds and pass them onto Fannie Mae" stands. (*Id.* at 25). At trial, the court must determine whether Plaintiffs or Defendant Fannie Mae are entitled to the insurance proceeds.

   I.    **Background**

The court set out the factual background and procedural history in a prior opinion. (Doc. 139).

   II.   **Standard of Review**

Fannie Mae asks the court to reconsider its summary judgment order under Federal Rule of Civil Procedure 54(b). Under Rule 54(b), a court may revise "any order or other decision . . . that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties" at "any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Whether to grant a motion to reconsider under Rule 54(b) is "committed to the sound discretion of the district judge." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). The Eleventh Circuit "ha[s] at least indicated that Rule 54(b)

takes after Rule 60(b)." *Hermann v. Hartford Life & Accident Ins. Co.*, 508 Fed. App'x. 923, 927 n. 1 (11th Cir. 2013) (citing *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990)). Under Rule 60(b), a court may provide relief for reasons such as "mistake, inadvertence, surprise, or inexcusable neglect" and "any other reason that justifies relief."

**III.    Discussion**

Now that Plaintiffs have raised the issue of the Note's negotiability in their sur-reply, the court must consider two questions to decide whether Fannie Mae's motion for reconsideration is due to be granted: first, whether the reverse mortgage note meets the requirements of a negotiable instrument under Alabama's U.C.C., which would allow CIT to enforce the Note as the holder of the Note; and second, whether CIT could enforce the Note as holder of the Note under other provisions of Alabama law if the Note is not a negotiable instrument.

A.   Negotiability of the Note

Ala. Code § 7-3-104(a) provides that a negotiable instrument is "an unconditional promise or order to pay a fixed amount of money." To be a negotiable instrument, paper must be "payable to bearer or to order at the time it is issued or first comes into possession of a holder," must be "payable on demand or at a definite time," and cannot "state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." *Id.* The Code provides that "a promise or order is unconditional *unless* it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are stated in another writing." Ala. Code § 7-3-106 (emphasis added). "A reference to another writing does not of itself make the promise or order conditional." *Id.*

A typical mortgage note qualifies as a negotiable instrument governed by Alabama's Uniform Commercial Code. *Summerlin v. Shellpoint Mortg. Servs.*, 165 F. Supp. 3d 1099, 1108 (N.D. Ala. 2016) (citing *Sturdivant v. BAC Home Loan Servicing, LP*, 159 So. 3d 47, 55 (Ala. Civ. App. 2013)). Plaintiffs assert that while Alabama courts have found mortgage notes to be negotiable instruments in a generalized way, "a document's specific provisions establish whether it is a negotiable instrument." (Doc. 148 at 6). The court agrees.

The court could find no cases in Alabama that instruct as to the negotiability of reverse mortgage notes. The court thus looks to cases from courts in other states that have analyzed reverse mortgage notes and to the face of the Note. *See Holsonback v. First State Bank of Albertville*, 394 So. 2d 381, 383 (Ala. Civ. App. 1980) ("Negotiability is determined from the face, the four-corners, of the instrument without reference to extrinsic facts.").

To persuade the court that the Note in this case is *not* negotiable, Plaintiffs point the court to an unpublished case in which a Florida trial court found that a reverse mortgage note similar to the one in this case was not a negotiable instrument, as well as a New York case in which a New York appellate court found that a reverse mortgage agreement "was not, and was never intended to be, a negotiable instrument." *See Reverse Mortgage Funding, LLC. V. Harriet R. Callahan et al.*, slip op. at 1, No. 2016-CA-655 (Fla. Cir. Ct. July 17, 2017), https://www.nclc.org/images/pdf/unreported/reverse_mortgage_v_unknown_heirs.pdf; *OneWest Bank, NA v. FMCDH Realty, Inc.*, 165 A.D. 3d 128, 135 (N.Y App. Div. Sept. 19, 2018).

Defendant similarly presents the court with persuasive authority: an unpublished case in which a Missouri trial court found that a reverse mortgage note like the one in this case *was* a negotiable instrument and several other cases in which various courts have applied Article III of the U.C.C. to reverse mortgage notes but did not address negotiability. *McClain v. Landmark*

6

*Equity Group, LLC*, No. 1716-CV-03534 (Mo. Cir. Ct. Apr. 26, 2018); *OneWest Bank, FSB v. Simpson*, 148 A.D.3d 920, 921–22 (N.Y. App. 2017); *OneWest Bank, FSB v. Erickson*, 367 P.3d 1063, 1078 (Wash. 2016); *Fin. Freedom Acquisition, LLC v. Griffin*, Case No. LLI-CV-116004685S, 2015 Conn. Super. LEXIS 3061, at *7 (Conn. Super. Ct. Dec. 10, 2015).

The court has reviewed these cases, as well as several others it came across during its own research on the issue of the negotiability and reverse mortgage notes. The court is persuaded by some of the other courts' reasoning in analyzing reverse mortgage notes, and ultimately, the court looks at the actual terms of the Note at issue in this case to determine whether it is a negotiable instrument. The court finds that this Note does not constitute a negotiable instrument under Alabama law.

The Note in this case meets two of the requirements for negotiability: it is payable to bearer, and it does not "state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money," as required under Ala. Code § 7-3-104(a). But the Note fails to meet the other requirements, as it is not an unconditional promise to pay, is not for a fixed amount of money, and is not payable on demand or at a definite time. Thus, the Note is not a negotiable instrument.

1. *Unconditional Promise to Pay*

Under Alabama's U.C.C., a note is unconditional "unless it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are stated in another writing." Ala. Code § 7-3-106(a). Referencing another writing is not enough to destroy negotiability; the note must be subject to the other writing in order to be rendered nonnegotiable.

       a) <u>Reference to Another Writing</u>

The Note in this case states that "Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest." (Doc. 120-1 at 14). Plaintiffs contend mention of the Loan Agreement destroys negotiability. (Doc. 148 at 5). Defendant asserts that the "Note merely refers to the Loan Agreement for a statement as to the amounts due and owing, but does not subject its enforceability to the terms of the Loan Agreement." (Doc. 150 at 7). Defendant points the court to the Official Comments to Ala. Code § 7-3-106, which provide examples of language that subjects a note to another writing and destroys negotiability. (*Id.* at 6). The Comments instruct:

> For example, a promissory note is not an instrument defined by Section 3-104 if it contains any of the following statements: 1. "This note is subject to a contract of sale dated April 1, 1990 between the payee and maker of this note." 2. "This note is subject to a loan and security agreement dated April 1, 1990 between the payee and maker of this note." 3. "Rights and obligations of the parties with respect to this note are stated in an agreement dated April 1, 1990 between the payee and maker of this note." It is not relevant whether any condition to payment is or is not stated in the writing to which reference is made. The rationale is that the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment.

Ala. Code § 7-3-106, Official Comment 1.

Here, the Note does not clearly state that the Note is *subject* to the Loan Agreement. But, the last sentence of the Comment instructs that a holder "should not be required to examine another document to determine rights with respect to payment." *Id.*

Further, the Eleventh Circuit has stated,

> The distinction between when a note's reference to another writing does or does not defeat negotiability . . . rests on two factors: the completeness and clarity of the note itself in setting forth the parties' obligations and the clarity and completeness of the reference . . . It is the need to consult the other writing that makes the note incomplete on its face and defeats negotiability.

8

*DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. McCranie*, 720 Fed. App'x 576, 584 (11th Cir. 2018) (analyzing whether a note was a negotiable instrument under Kansas's similar U.C.C.); *see also Foster v. Hacienda Nirvana*, 32 So. 3d 1256, 1264 (Ala. 2009) (concluding that a note was negotiable "[b]ecause it contains all of the characteristics of a negotiable instrument as described in § 7-3-103(a) and it stands on its own without reliance on another document").

Ala. Code § 7-3-106(b) provides that a note "is not made conditional (i) by a reference to another writing for a statement of rights with respect to collateral, prepayment, or acceleration." The Note at issue does not reference the Loan Agreement for a statement of rights with respect to any of those issues *but for the actual amount of the Loan*. A holder could not look at the Note and know its rights or the other party's obligations with respect to payment; the holder would have to look to the Loan Agreement to determine the amount of the Loan Advances. (Doc. 120-1 at 14).

The court finds that the Note is subject to the Loan Agreement because of the need to look to the Loan Agreement to determine rights and obligations as to payment.

### b) Express Condition

Plaintiffs assert that the express absolution of personal liability contained in the Note destroys negotiability because Ms. Getaw did not make an unconditional promise to pay if she had no personal liability for the debt. (Doc. 148 at 5). The Note states:

> Borrower shall have *no personal liability* for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

(Doc. 120-1 at 14) (emphasis added).

9

Defendant contends that the express absolution of personal liability is akin to limiting payment "to a particular fund or source," which does not destroy negotiability. *See* Ala. Code 7-3-106(b) ("A promise or order is not made conditional . . . because payment is limited to resort to a particular fund or source."). But the court is not convinced. The language of the Note states that Borrower has no personal liability; the Borrower does not have to pay the debt. The court finds that this absolution of personal liability, apparent on the Note's face, constitutes an "express condition" to payment and destroys negotiability. *See Reverse Mortgage Funding, LLC. V. Harriet R. Callahan et al.*, slip op. at 6, No. 2016-CA-655 (Fla. Cir. Ct. July 17, 2017), https://www.nclc.org/images/pdf/unreported/reverse_mortgage_v_unknown_heirs.pdf (holding that a reverse mortgage note was conditional because it contained "specific language stating that Defendant [would] have *no personal liability* for the amount owed") (emphasis in original).

2. *Fixed Amount of Money*

The Note at issue in this case does not contain an *unconditional* promise; it also fails to specify a "fixed amount of money." The Note states:

> In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated December 7, 2005 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest.

(Doc. 120-1 at 14).

The Note itself lists no amount of money. Yet Defendant argues that the court can determine that a fixed amount of money existed at the time of the loan. (Doc. 150 at 10). The "Home Equity Conversion Mortgage Payment Plan," which is part of the separate Loan Agreement, shows a principal limit of $34,456.50 and that this entire amount was advanced to the borrower at the time of the closing in a lump sum, rather than through monthly payments. (Doc. 120-1 at 11).

10

But negotiability is determined from the *face of* the instrument, and the instrument itself does not clearly contain a fixed amount. *See OneWest Bank, N.A. v. FMCDH Realty, Inc.*, 165 A.D. 3d 128, 134 (N.Y. App. Div. Sept. 19, 2018) (finding that a cash account agreement in which "the borrower promised to pay when due 'all amounts advanced'" was not a negotiable instrument because it did not contain a sum certain); *Third Fed. Sav. & Loan Ass'n of Cleveland v. Koulovaris*, 257 So. 4d 652, 654 (Fla. Ct. App. May 18, 2018) (finding that a note that did not show how much borrowers actually borrowed on its face did not contain a "fixed amount of money"); *Chuchian v. Situs Investments, LLC*, 219 So. 3d 992, 993 (Fla. Ct. App. June 2, 2017) (stating that a credit agreement "was a nonnegotiable instrument because it was not for a fixed sum"); *Resolution Trust Corp. v. Oaks Apts. Joint Venture*, 966 F.2d 955, 1000–1002 (5th Cir. 1992) (finding that a note that did not "facially demand payment of a sum certain" was not negotiable). To put it another way, the Note does not "carr[y] on its face its own history" regarding how much Ms. Getaw borrowed. *See Brown v. First Nat. Bank*, 15 So. 435, 436 (Ala. 1894). Although the Loan Agreement shows that no further advances are available to the Borrower because the amount disbursed at the time of closing equaled the principal limit, the Note itself does not state the amount due.

### 3. Payable at a Definite Time

Lastly, the court finds that the Note is not negotiable because the Note does not indicate that it is payable at a definite time. Ala. Code. § 7-3-104(a)(2) provides that a negotiable instrument is "payable on demand or at a definite time." To be payable on demand, a promise or order must "state[] that it is payable on demand or at sight, or otherwise indicate[] that it is payable at the will of the holder." Ala. Code. § 7-3-108(a). The Note in this case says no such thing and is not payable on demand.

> To be payable at a definite time, a promise or order must be
>
> payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued, subject to rights of (i) prepayment, (ii) acceleration, (iii) extension at the option of the holder, or (iv) extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event.

Ala. Code. § 7-3-108(b).

Defendant points to the terms of the mortgage, which states that the Note is payable no later than October 15, 2075. (Doc. 120-1 at 18). Defendant also states that the Lender can require payment in full upon certain events—the Borrower's death, the Borrower's selling the property, when the property ceases to be the principal residence of the Borrower, if the Borrower fails to occupy the premises for more than 12 months because of physical or mental illness, or if Borrower fails to fulfill an obligation under the Security Instrument. (Doc. 120-1 at 15). The court finds that the events requiring payment in full constitute an acceleration clause, and the court is not convinced the face of the Note shows that it is payable at a definite and ascertainable time.

In conclusion, the court finds that the Note at issue in this case is not an unconditional promise to pay a fixed amount of money at a definite time. Thus, the Note is not a negotiable instrument falling under Alabama's U.C.C., and Fannie Mae is not entitled to summary judgment based upon CIT's being the holder of a negotiable instrument.

    B.  <u>Enforceability Outside the U.C.C.</u>

Fannie Mae argues that the Note is enforceable and assignable under Alabama law, even if the court determines that the Note is not a negotiable instrument. Fannie Mae states that "possession of the original Note is *prima facie* evidence of its ownership and transfer regardless as to whether or not the Note qualifies a negotiable instrument." (Doc. 150 at 13). The court

agrees that the Note is assignable outside the U.C.C. but found on summary judgment that the evidence showed "conflicting information regarding whether CIT had a valid, current assignment granting it the right to service the mortgage note." (Doc. 139 at 25). The court will now consider whether CIT could enforce the Note as possessor of the Note endorsed in blank outside the U.C.C.

Ala. Code § 35-10-12—a code section independent from Alabama's U.C.C.—states that the power of sale in a mortgage is enforceable by "any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured." Under the U.C.C., the assignee of the mortgage can foreclose, the owner of the debt can foreclose, or the holder of the note can foreclose; all are entitled to the money secured by the mortgage. *See Sturdivant v. BAC Home Loan Servicing,* LP, 159 So. 3d 47, 53 (Ala. Civ. App. 2013) ("A deed resulting from a foreclosure sale may be deemed void when, among other things, 'the foreclosing entity does not have the legal right to exercise the power of sale, as for example, when that entity is neither the assignee of the mortgage . . . nor the holder of the promissory note . . .'") (citing *Campbell v. Bank of America, N.A.*, 141 So. 3d 492, 495 (Ala. Civ. App. 2012)).

Fannie Mae argues that the Note could be assigned and transferred to CIT "purely by endorsement **entirely independent** of the UCC or its status as a negotiable instrument." (*Id.* at 14) (emphasis in original). Fannie Mae points also to Ala. Code § 8-5-20, which is contained in the chapter of the commercial code addressing "nonnegotiable instruments." That provision states that "[a]ll bonds, writings, and contracts for the payment of money, or other thing, or the performance of any act or duty, are assignable by endorsement so as to authorize an action thereon by each successive endorsee." Fannie Mae argues that "the transfer and assignment of

13

the Note by its endorsement is authorized by Alabama statute and evidence of CIT's right to enforce the Note by its possession." (Doc. 150 at 14).

The court is not convinced that CIT could enforce the Note as holder of the Note, because CIT was not the owner of the debt or the truly interested party. In *Hughes v. Black*, 39 So. 984, 984 (Ala. 1905), the Alabama Supreme Court favorably described two Alabama Supreme Court decisions involving "nonnegotiable paper," like the Note in this case—*Jarrell v. Lillie*, 30 Ala. 271 (Ala. 1886) and *Cobbs v. Bryant*, 86 Ala. 316 (Ala. 1889). The Court held that the "court properly decided that [the attorney's possession of a nonnegotiable instrument in *Jarrell* and the agent's possession of a nonnegotiable instrument in *Cobbs*] was not sufficient to show that said attorney or agent was the owner or party really interested in the note." *Hughes*, 39 So. at 984.

*Jarrell* involved a nonnegotiable note that was payable to bearer, and the Court reasoned that while "[p]ossession is *prima-facie* evidence of title or interest in the party having possession . . . possession as an attorney, would not authorize a suit and recovery in the name of the attorney." 30 Ala. at 272–73. In *Cobbs*, which also involved a nonnegotiable note that was payable to bearer, the Court stated that "[o]rdinarily possession of personal property is *prima facie* evidence of ownership, but the possession of an agent does not prove an ownership in him of the principal's property." 5 So. at 586.

The court admits that these are old cases on which it is hesitant to heavily rely. But the bottom line is this: the court has found that the Note is not a negotiable instrument governed under Alabama's U.C.C., and Fannie Mae has not convinced the court that CIT could enforce the Note solely by its possession of the Note endorsed in blank outside the U.C.C.

Instead, at trial, to show that it is entitled to the insurance proceeds, Fannie Mae must show that CIT had authority to foreclose on Ms. Getaw's property and obtain the insurance

14

proceeds because it had a valid assignment to service the mortgage and Note on behalf of Fannie Mae. The court found on summary judgment that a genuine issue of material fact existed as to this question. (Doc. 139 at 25). It still exists.

For the reasons explained, the court **DENIES** Fannie Mae's motion for reconsideration. But the court *sua sponte* corrects its erroneous assumption stated in its previous memorandum opinion (doc. 139) that the reverse mortgage note involved in this case is a negotiable instrument.

**DONE** and **ORDERED** this 16th day of June, 2021.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE